MIDDLESEX, ss.    # Commonwealth of Massachusetts    SUPERIOR COURT

I, KAren O'Connor, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings in case NO. 03-4985 entered in the Superior Court on the eighth day of December in the year of our Lord two thousand three

In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this fifth day of February in the year of our Lord two thousand four

_____
Deputy Assistant Clerk of Courts



COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                                   SUPERIOR COURT DEPARTMENT
                                                                 OF THE TRIAL COURT
                                                                 CIVIL ACTION NO.: 03-4985J

JACK ROGERS and                )
PAUL PINELLA,                  )
                               )
                               )
            Plaintiffs         )
v.                             )
                               )
COMCAST CORPORATION            )
and AT&T BROADBAND,            )
                               )
            Defendants         )
                               )

## NOTICE OF FILING OF NOTICE OF REMOVAL

To:    (See Attached Service List)

PLEASE TAKE NOTICE that Defendant Comcast Corporation and AT&T Broadband, on January 22, 2004, did file in the United States District Court for the District of Massachusetts its Notice of Removal of Action Under 28 U.S.C. § 1441 to that Court. A certified copy of the Notice of Removal is attached hereto as "Exhibit A."



BO1 15622638.1 / 34729-000309

COMCAST CORPORATION and
AT&T BROADBAND,

By their attorneys,

_____
Mark A. Berthiaume
B.B.O. No. 041715
SEYFARTH SHAW, LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
Tel. (617) 946-4800

DATED: January 23, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail/~~hand~~ on ___1/23/04___.

_____
MARK A. BERTHIAUME

-2-

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                                    SUPERIOR COURT DEPARTMENT
                                                 CIVIL ACTION NO.
                                                         03-1985

Jack Rogers and Paul Pinella,       )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )
                                    )
Comcast Corporation                 )
and AT&T Broadband,                 )
                                    )
            Defendants.             )
                                    )



12/08/03 14:03#0000 1269 CLERK A
CIVIL          240.00
SURCHARGE       15.00
SECC            20.00
SUMMONS          1.00
SUMMONS          9.00
034985 #
SUBTTL         285.00
TOTAL      285.00
CHECK          285.00

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
MASSACHUSETTS ANTITRUST ACT AND JURY DEMAND**

Plaintiffs, on behalf of themselves and the Class of those similarly situated, bring this action under the Massachusetts Antitrust Act against Defendant Comcast Corporation and its subsidiary, AT&T Broadband.

### INTRODUCTION

1.  Congress has attempted to protect the public against the growing market dominance of cable television companies by encouraging competition in local markets as a matter of national policy. In doing so, Congress passed the Cable Television Consumer Protection Act of 1992 to promote competition among cable operators. A cornerstone of this legislation was a prohibition against exclusive cable franchises for a particular geographic area, so that cable companies would directly compete against each other. In 1996, Congress deregulated cable television, once again for the express purpose of promoting competition. Despite passage of the 1992 and 1996 Congressional legislation, large cable companies,

44473

including Defendants, have violated antitrust laws and carved out their own respective areas of operation to the exclusion of competition from other cable companies. As a consequence of this illegal activity, cable prices have increased significantly beyond the rate of inflation.

2.  Rather than compete against one another, large cable companies such as Defendants have divided and allocated markets through a series of agreements "swapping" customers and "clustering" cable systems in geographic areas. Such conduct has allowed a cable company, including Comcast, in a particular "cluster" to acquire or maintain monopoly power, raise prices, engage in anticompetitive conduct and limit choice for cable consumers to effectively the only game in town--the cable services of the "cluster" monopoly cable company. This lawsuit seeks an injunction, treble damages and other relief against Defendants for their violations of the Massachusetts Antitrust Act arising from Defendants' imposition of horizontal market restraints by entering into and implementing agreements with competitors to "swap" their respective cable customers, in violation of the Massachusetts Antitrust Act, M.G.L. c. 93, § 4, and Comcast's unlawful acquisition or maintenance of monopoly power, or its attempted monopolization of the relevant market, in its "cluster" in the Boston, Massachusetts area, in violation of the Massachusetts Antitrust Act, M.G.L. c. 93, § 5.

## NATURE OF THE ACTION

3.  Plaintiffs bring this action against Defendants for violations of the Massachusetts Antitrust Act, M.G.L. c. 93, §§ 4 and 5.

4.  Defendants have imposed horizontal market restraints by entering into and implementing agreements with competitors to exchange or "swap" their respective cable television assets, including subscribers. Through the imposition of such horizontal market restraints, Comcast has been able to avoid meaningful competition and Comcast's cable

44473                                2

subscribers in Comcast's Boston, Massachusetts "cluster" have paid higher prices for cable television services than they would have absent Defendants' unlawful conduct. Defendants' conduct in entering into and implementing agreements allocating markets, territories and customers for cable television services constitutes a *per se* violation of the Massachusetts Antitrust Act, M.G.L. c. 93, § 4.

5.  Comcast also has engaged in conduct constituting unlawful monopolization in violation of the Massachusetts Antitrust Act, M.G.L. c. 93, § 5. Comcast has willfully acquired or maintained monopoly power in the relevant product market (multichannel video programming services) within the relevant geographic market (Comcast's Boston cluster, as defined below). Comcast's willful acquisition or maintenance of monopoly power in the relevant market is the result of exclusionary, anticompetitive conduct, including, without limitation, entering into and implementing illegal agreements with competitors to allocate territories, markets and customers through the "swapping" of cable television subscribers. Through such unlawful conduct, Comcast has excluded potential competitors from within the relevant geographic market and Plaintiffs and members of the Class, as a result of Comcast's unlawful conduct, have been forced to pay higher prices for cable television in the relevant market than they would have paid in the absence of Comcast's unlawful conduct.

6.  Through such unlawful conduct, Comcast has attempted to monopolize the relevant market. Comcast has engaged in such conduct with the specific intent to monopolize and, through such conduct, has demonstrated a dangerous probability of achieving monopoly power in the relevant market. Comcast's attempt to monopolize the relevant market also violates the Massachusetts Antitrust Act, M.G.L. c. 93, § 5.

## PARTIES

**PLAINTIFFS**

7. Plaintiff Jack Rogers is an individual who resides in Arlington, Middlesex County, Massachusetts. During the time period covered by this complaint, Plaintiff has been and continues to be a subscriber of non-basic cable programming services provided by Comcast.

8. Plaintiff Paul Pinella is an individual who resides in Winchester, Middlesex County, Massachusetts. During the time period covered by this complaint, Plaintiff has been and continues to be a subscriber of non-basic cable programming services provided by Comcast.

**DEFENDANTS**

9. Comcast, formally known as AT&T Comcast Corporation, is a Pennsylvania corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102. Comcast was formed through the acquisition on November 18, 2002 by Comcast Holdings Corporation of AT&T Broadband, the cable business of AT&T Corp., a New York corporation with its office and principal place of business at 900 Routes 202-206 North, Bedminster, New Jersey.

10. Defendant AT&T Broadband, formally a division of AT&T Corp., was acquired by Comcast Corporation on November 18, 2002. The acquisition occurred in several steps. First, AT&T contributed its cable business, including substantially all the assets, liabilities and businesses represented by AT&T Broadband Group, to a newly formed holding company, AT&T Broadband Corp. Next, AT&T Broadband was spun off from AT&T Corp. Finally, Comcast and AT&T Broadband combined to form the new Comcast Corporation. Upon completion of these transactions on November 18, 2002, AT&T Broadband became a wholly owned subsidiary

44473                                    4

of Comcast, with its principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102.

11.  Before combining, AT&T Broadband and Comcast were two separate, independent owners and operators of multiple cable systems, operating at the same level of competition in the cable industry. At the time of the transactions described in paragraphs 9 and 10, Comcast was the third largest cable operator in the United States, and AT&T owned the largest cable operator in the United States. Upon acquiring AT&T's cable business on November 18, 2002, Comcast became the largest cable operator in the country. Comcast serves over twenty-one million cable subscribers.

12.  During the Class Period alleged herein, Defendants have provided and continue to provide cable television services in the Commonwealth of Massachusetts, including in Middlesex County, and in the United States by means of interstate commerce.

## JURISDICTION AND VENUE

13.  Plaintiffs bring this action pursuant to Section 12 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 12, for injunctive relief, treble damages, and Plaintiffs' costs of this suit, including reasonable attorney fees, against Defendants for the injuries sustained by Plaintiffs and other similarly situated Class members by reason of Defendants' violations of the Massachusetts Antitrust Act, M.G.L. c. 93, §§ 4 and 5.

14.  Jurisdiction is proper pursuant to Sections 3 and 12 of the Massachusetts Antitrust Act, M.G.L. c. 93, §§ 3 and 12.

15.  Venue is proper in this Court pursuant to Section 12 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 12, because Defendants' unlawful conduct occurred and affected cable competition and subscribers in part in Middlesex County, Massachusetts.

## CLASS ALLEGATIONS

16.  a.   As used in this paragraph and Complaint:

(1) "Basic Cable Services" means the separately available basic tier of video programming services to which subscription is required for access to other tiers of cable service offered by Comcast and which includes the retransmission of local television broadcast signals and public, educational and governmental access channels.

(2) "Comcast's Boston cluster" includes the following counties in which Comcast's cable franchises are located: Barnstable, Essex, Hampshire, Middlesex, Nantucket, Norfolk, Plymouth and Suffolk, Massachusetts; and Belknap, Hillsborough, Merrimack, Rockingham and Strafford, New Hampshire.

b.   Plaintiffs bring this class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of the following class:

> All cable television customers who subscribe or subscribed since December 1, 1999, to video programming services (other than solely to basic cable services) from Defendants in Comcast's Boston cluster. The class excludes governmental entities, Defendants, Defendants' subsidiaries and affiliates and this Court.

17.   Plaintiffs do not yet know the exact size of the Class and such information is in the exclusive control of Defendants. However, based on the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class members is at least over 2 million cable subscribers, and that the members of the Class are located throughout the Boston, Massachusetts and surrounding area. Consequently, joinder of all members of the Class would be impracticable.

18. Plaintiffs will fairly and adequately protect the interests of the Class members, and have engaged counsel experienced and competent in antitrust and class action litigation. Plaintiffs have no interests antagonistic to those of the other members of the Class.

19. Plaintiffs' claims are typical of the claims of the Class in that each paid for non-basic or cable programming services and was injured by the same wrongful conduct of Defendants alleged in this Complaint. The violations of the Massachusetts Antitrust Act, the effects of such violations and the relief sought are common to Plaintiffs and the members of the Class.

20. The rights of Plaintiffs and the Class members involve common questions of law and fact that would predominate over questions affecting only individual members of the Class. Whatever difficulties may exist in the management of the Class are generally outweighed by the advantage of that procedure, including but not limited to providing claimants with a method for redress of claims that might otherwise not warrant individual litigation.

21. The questions of law and fact common within the Class include, but are not limited to:

    a. whether Defendants' conduct in imposing horizontal market restraints by entering into and implementing agreements with competitors to "swap" their respective cable systems and customers constitutes violations of Section 4 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 4;

    b. whether Comcast's conduct in possessing and willfully acquiring or maintaining monopoly power in, or attempting to monopolize, the relevant market and engaging in the acts and practices alleged in this Complaint constitutes violations of Section 5 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 5;

   c. whether Defendants' acts caused prices for cable television services in the relevant market to be artificially high and not competitive;

   d. whether Plaintiffs and the members of the Class were injured by Defendants' acts;

   e. the measure of damages by which Defendants' conduct injured all members of the Class; and

   f. whether the Class is entitled to injunctive relief as a result of Comcast's continuing conduct.

22. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy, because it permits a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence and effort. Class treatment will also permit the adjudication of claims by smaller Class members, who could not afford individually to litigate antitrust claims against the large corporate defendants.

## GENERAL ALLEGATIONS

### DEREGULATION OF CABLE INDUSTRY

23. In 1992, to address the increasing market power of cable operators and "to promote competition in the delivery of diverse sources of video programming and to assure that the widest possible diversity of information sources are made available to the public," Congress passed the Cable Television Consumer Protection Act of 1992. To further and encourage competition, Congress prohibited local jurisdictions from awarding exclusive franchises for cable systems. 47 U.S.C. § 541(a)(1).

24. In 1996, Congress passed the Telecommunications Act of 1996, 47 U.S.C. § 251 (the "1996 Act"), to encourage competition, including competition among cable television

44473         8

providers. Through the 1996 Act, Congress sought to "provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. Cong. Rep. 104-458, 1996 WL 46795, at 1 (1996), U.S. Code Cong. & Admin. News 1996, at 124.

25. Pursuant to the 1996 Act, 47 U.S.C. § 543, the FCC's authority to regulate the rates charged for non-basic or cable programming services (those channels that are not on a cable system's basic tier and for which there is no per-channel or per-program charge) was terminated for services provided after March 31, 1999. Therefore, the rates charged for such cable services are determined by the cable companies themselves. Neither the FCC nor any state or local entity has the authority to review rates for such cable services or to investigate allegations that such rates are excessive.

## CABLE INDUSTRY: INCREASED CONSOLIDATION, SKYROCKETING PRICES AND LIMITED CONSUMER CHOICES

26. Despite Congress' intention of promoting competition in the cable industry to benefit the public, the cable industry has become increasingly consolidated, consumers' choices among cable operators have been eliminated or substantially narrowed, and in monopoly "clusters" created by large cable companies, including Comcast, cable prices have increased significantly more than in areas where competition exists.

27. In its 2002 report on competition in the cable market, the FCC found that cable companies continue to dominate the market for multichannel video services. As of June 2002, the FCC determined that cable operators provided video programming to more than three-quarters (76.5%) of all multichannel video subscribers nationwide. *In the Matter of Annual Assessment of the Status of Competition in the Market for Delivery of Video Programming, Ninth*

*Annual Report*, MB Docket No. 02-145, released December 31, 2002, ("Ninth Video Competition Report") ¶4. As a result of increased consolidation within the cable industry, as cable operators acquired and traded cable systems and subscribers, the ten largest cable operators serve approximately 85% of all cable subscribers. *Id.* ¶14. In 1995, prior to passage of the Telecommunications Act of 1996, the top ten cable companies served approximately 73.22% of all cable subscribers. *In the Matter of Annual Assessment of the Status of Competition in the Market for Delivery of Video Programming, Second Annual Report*, App. G at Table 2 (1995). In its 2002 report on video competition, the FCC concluded, "The market for the delivery of video programming to households continues to be highly concentrated." *Ninth Video Competition Report* ¶113.

28. The FCC has determined that only approximately 2% of all cable consumers reside in areas with effective competition and only approximately 1.3% of cable consumers are served by an overbuilder (a competing cable system operator).

29. Studies confirm that competition from another cable company is essential to restrain the prices of a dominant cable provider. For example, in its October 2002 report, the United States General Accounting Office (GAO) determined that "the presence of a second cable franchise (known as an overbuilder) does appear to restrain cable prices" and that "in franchise areas with a second cable provider, cable prices are approximately 17 percent lower than in comparable areas without a second cable provider." GAO, *Report to the Subcommittee on Antitrust, Competition, and Business and Consumer Rights, Committee on the Judiciary, U.S. Senate: Telecommunications, Issues in Providing Cable and Satellite Television Service (2002)* *("GAO's 2002 Cable Report"),* at 9. In its October 2003 report, the GAO found that competition from a wire-based cable provider (a competitor using a wire technology, such as a second cable