*Annual Report*, MB Docket No. 02-145, released December 31, 2002, ("Ninth Video Competition Report") ¶4. As a result of increased consolidation within the cable industry, as cable operators acquired and traded cable systems and subscribers, the ten largest cable operators serve approximately 85% of all cable subscribers. *Id.* ¶14. In 1995, prior to passage of the Telecommunications Act of 1996, the top ten cable companies served approximately 73.22% of all cable subscribers. *In the Matter of Annual Assessment of the Status of Competition in the Market for Delivery of Video Programming, Second Annual Report*, App. G at Table 2 (1995). In its 2002 report on video competition, the FCC concluded, "The market for the delivery of video programming to households continues to be highly concentrated." *Ninth Video Competition Report* ¶113.

  28. The FCC has determined that only approximately 2% of all cable consumers reside in areas with effective competition and only approximately 1.3% of cable consumers are served by an overbuilder (a competing cable system operator).

  29. Studies confirm that competition from another cable company is essential to restrain the prices of a dominant cable provider. For example, in its October 2002 report, the United States General Accounting Office (GAO) determined that "the presence of a second cable franchise (known as an overbuilder) does appear to restrain cable prices" and that "in franchise areas with a second cable provider, cable prices are approximately 17 percent lower than in comparable areas without a second cable provider." GAO, *Report to the Subcommittee on Antitrust, Competition, and Business and Consumer Rights, Committee on the Judiciary, U.S. Senate: Telecommunications, Issues in Providing Cable and Satellite Television Service (2002)* ("*GAO's 2002 Cable Report*"), at 9. In its October 2003 report, the GAO found that competition from a wire-based cable provider (a competitor using a wire technology, such as a second cable

company) is limited to very few (about 2% of) markets; however, in markets where such competition from a second wireline cable company exists, cable rates are significantly lower--by approximately 15%--than cable rates in markets without competition from a second wireline cable operator. GAO, *Report to the Chairman, Committee on Commerce, Science, and Transportation, U.S. Senate: Telecommunications, Issues Related to Competition and Subscriber Rates in the Cable Television Industry ("GAO's 2003 Cable Report),* at 3, 9 and 10.

30. The FCC has also found that the prices charged by large cable companies are restrained by the presence of an overbuilder in the market. In its 2001 annual report on cable prices, the FCC determined, solely based on information provided by cable operators, that cable prices on average were 6.3% lower in areas where the incumbent cable operator faced effective competition from overbuilders. *In the Matter of Implementation of Section 3 of the Cable Television Consumer Protection and Competition Act of 1992, Statistical Report on Average Rates for Basic Service, Cable Programming Service, and Equipment,* (2001) (*"FCC's 2001 Report on Cable Prices"*) ¶8. In its 2002 report on cable prices, the FCC determined, again solely based on information provided by cable operators, that cable prices were on average 6.4% lower in areas where the incumbent cable operator encounters effective competition from an overbuilder. *In the Matter of Implementation of Section 3 of the Cable Television Consumer Protection and Competition Act of 1992, Statistical Report on Average Rates for Basic Service, Cable Programming Services, and Equipment* ("FCC's *2002 Report on Cable Prices"*) ¶28.

31. By contrast, the presence of competition from a direct broadcast system (DBS) provider does not restrain, or restrains only slightly, the prices of cable services provided by large cable companies. The FCC has determined that in areas where DBS has achieved a degree of market presence, there is no significant effect on prices for cable service. *FCC's 2002 Report on*

*Cable Prices* ¶45. In its October 2002 report, the GAO also found that the presence of DBS companies has not led to lower cable prices. *GAO's 2002 Cable Report*, at 9. In its October 2003 report, the GAO determined that DBS competition is associated with only a slight reduction in cable rates. *GAO's 2003 Cable Report,* at 11.

**DEFENDANTS' CLUSTERING SCHEME**

32.    Defendants' clustering scheme has been perpetrated in part by Defendants' entering into and implementing agreements to exchange or "swap" Defendants' cable customers in other areas of the country for the cable customers of competitor cable system operators in Comcast's cluster in and around Boston, Massachusetts. Examples of such "swap" agreements entered into and implemented by Defendants include the following:

a.    In or about December, 1999, AT&T Broadband entered into a "swap" agreement with a competitor cable company, Charter Communications, which involved the exchange of approximately 632,000 cable subscribers between the companies in various parts of the country. As part of this "swap" agreement, AT&T Broadband obtained from Charter Communications cable subscribers in the Boston and Worcester, Massachusetts areas.

b.    In or about April, 2000, AT&T Broadband and a competitor cable company, Cablevision Systems Corporation, entered into agreements under which AT&T's cable business received cable systems serving approximately 357,850 subscribers in Boston and Eastern Massachusetts. In return, Cablevision Systems Corporation acquired cable systems from AT&T Broadband serving approximately 125,500 subscribers in northern New York suburbs and approximately $878 million in AT&T stock and approximately $284 million in cash. This "swap" transaction closed in or about January 2001. On November 18, 2002, Comcast acquired AT&T Broadband, including AT&T Broadband's cable customers in Comcast's Boston cluster.

33.  As a result of such unlawful "swapping" agreements and transactions, potential competitors were removed from Comcast's Boston cluster and Defendants were able to raise prices within Comcast's Boston cluster.

34.  The purpose and effect of Defendants' conduct in entering into and implementing such unlawful "swapping" agreements and transactions was unreasonably to restrain, suppress and eliminate competition for cable television service in Comcast's Boston, Massachusetts cluster.

35.  Defendants' conduct in imposing horizontal territory, market and customer allocations in the manner alleged in this Complaint has had the following effects, among others:

   a.  Competition, including price competition, for cable television service has been, and will continue to be restrained, suppressed, and/or eliminated;

   b.  Competitors have been, and will continue to be restrained from entering into the areas subject to the allocation agreements;

   c.  Comcast has increased prices for cable programming services to artificially high, non-competitive levels and, unless enjoined, will continue to maintain prices at such levels; and

   d.  Cable subscribers have been, and will continue to be deprived of the benefits of free and open competition.

36.  Pursuant to the swapping agreements described above in paragraph 32, Defendants have not competed in the cable television markets in which they exchanged subscribers in the "swap" agreements are located, and the other cable companies involved in such "swapping" agreements have not competed against Defendants in Comcast's Boston cluster.

44473

13

37. According to their own submissions to the FCC in connection with Comcast's acquisition through merger of AT&T's cable business, Comcast and AT&T did not compete against each other in their respective cable television markets before the companies combined, the companies did not study or evaluate the feasibility of such competition and the companies did not intend to compete in each other's cable markets.

38. Within its cluster in and around Boston, Massachusetts, Comcast has raised its rates for non-basic cable services above the rates that would be charged in a competitive environment.

## VIOLATIONS ALLEGED

### COUNT I

### *Per Se* Violation of Section 4 of the Massachusetts Antitrust Act

39. Plaintiffs incorporate paragraphs 1- 38 as if fully set forth herein.

40. Defendants have engaged in a strategy of allocating territories, markets and customers among competitors at the same level of the cable television market structure.

41. Defendants have imposed horizontal market restraints, specifically the allocation of territories, markets and customers through agreements to "swap" or exchange cable television assets, including subscribers, with other cable companies. Examples of such "swapping" agreements and transactions are set forth above in paragraph 32.

42. Defendants' conduct of imposing horizontal territory, market and customer allocations by entering into and implementing unlawful "swapping" agreements, arrangements or devices constitutes a *per se* violation of Section 4 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 4.

43. As a proximate result of the horizontal territory, market and customer allocations effected through the "swapping" agreements entered into and implemented by Defendants,

Plaintiffs and members of the Class have paid more, and will continue to pay more for cable programming services than they would have otherwise paid, and accordingly have suffered, and will continue to sustain injury and damages in an amount to be determined according to proof at the time of trial.

## COUNT II

### Monopolization

44.  Plaintiffs incorporate paragraphs 1 - 42 as if fully set forth herein.

45.  The relevant geographic market is Comcast's Boston cluster, as defined in paragraph 16. a. (2).

46.  The relevant product market is defined as multichannel video programming services, which are distributed by multichannel video programming distributors ("MVPDs"), including cable television operators such as Comcast, overbuilders and direct broadcast satellite operators.

47.  Comcast possesses monopoly power in the relevant product market within the relevant geographic market.

48.  Upon information and belief, Comcast controls approximately 80% of cable subscribers within the relevant geographic market. Upon information and belief, Comcast possesses at least a 75% share of the relevant product market within the relevant geographic market.

49.  Comcast has willfully obtained or maintained its monopoly through anticompetitive means, including the acts and practices set forth in this Complaint.

50.  Defendants have imposed horizontal market restraints, specifically the allocation of territories, markets and customers through agreements to "swap" or exchange cable television assets, including subscribers, with one or more other cable companies in order to monopolize the

relevant geographic market. Examples of such "swapping" agreements and transactions are set forth above in paragraph 32.

51.    As a result of such unlawful "swapping" agreements and transactions, Defendants' potential competitors were removed from the relevant geographic market and Defendants were able to raise prices within the relevant geographic market. The purpose and effect of such "swapping" agreements and transactions was unreasonably to restrain, suppress and eliminate competition for cable television service in the relevant geographic market.

52.    Defendants' conduct of imposing horizontal territory, market and customer allocations by entering into and implementing swapping agreements, arrangements or devices, which is unlawful as a *per se* violation of Section 4 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 4, constitutes anticompetitive conduct through which Comcast has willfully acquired or maintained monopoly power in the relevant market.

53.    Potential cable company competitors, including overbuilders, to large incumbent cable operators such as Comcast face significant barriers to entry into the market. These high barriers to entry into the MVPD market faced by potential cable company competitors, include, among other things, overcoming the significant capital costs required for entry; obtaining the necessary cable franchises from local governmental authorities; overcoming the "clustering" scheme engaged in by Defendants and other large cable operators; and overcoming anticompetitive acts and practices of the incumbent monopolist cable company, including Defendants' conduct in entering into and implementing the "swapping" agreements or transactions set forth above in paragraph 32.

54.    Comcast's willful acquisition or maintenance of monopoly power in the relevant market was the result of the exclusionary, anticompetitive conduct alleged in this Complaint,

specifically including Defendants' conduct in entering into and implementing illegal agreements with other cable companies to allocate territories, markets and customers through the "swapping" of cable television systems and subscribers.

55. Comcast exercised its monopoly power by raising prices for its cable television subscribers to artificially high, noncompetitive levels within the relevant geographic market.

56. Comcast's anticompetitive conduct in the relevant market, as set forth in this Complaint, has had the following effects, among others:

   a. Competition, including price competition, for cable programming services has been, and will continue to be restrained, suppressed and/or eliminated;

   b. Competitors or potential competitors have been, and will continue to be restrained from entering into the relevant market;

   c. Comcast has increased prices for cable services to artificially high, noncompetitive levels and, unless enjoined, will continue to maintain prices at such levels; and

   d. Subscribers to cable services have been, and will continue to be deprived of the benefits of free and open competition.

57. Comcast's willful acquisition or maintenance of monopoly power was not the result of a superior product, business acumen or historical accident.

58. There is no legitimate procompetitive business justification for the anticompetitive actions and conduct which facilitated Comcast's monopolization of the relevant market.

59. Comcast's possession and willful acquisition or maintenance of monopoly power in the relevant market and the exclusionary, anticompetitive conduct alleged in this Complaint constitute a violation of Section 5 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 5.

60. Plaintiffs and members of the Class were injured in their business or property by Comcast's monopolization of the relevant market as alleged in this Complaint. Without limiting the generality of the foregoing, Plaintiffs and members of the Class have been forced to pay higher prices for cable television in the relevant market than they would have paid in the absence of Comcast's unlawful conduct.

## COUNT III

### Attempted Monopolization

61. Plaintiff incorporates paragraphs 1 - 60 as if fully set forth herein.

62. Comcast has engaged in the anticompetitive conduct alleged in this Complaint with the specific intent to monopolize the relevant product market in the relevant geographic market.

63. Comcast's conduct as set forth in this Complaint constitutes and demonstrates a dangerous probability of Comcast achieving monopoly power in the relevant product market in the relevant geographic market.

64. Comcast's attempt to monopolize the relevant product market in the relevant geographic market constitutes a violation of Section 5 the Massachusetts Antitrust Act, M.G.L. c. 93, § 5.

65. Plaintiffs and members of the Class have been injured in their business or property by Comcast's attempt to monopolize the relevant market as alleged in this Complaint. Without limiting the generality of the foregoing, Plaintiffs and members of the Class have been forced to pay higher prices for cable television in the relevant market than they would have paid in the absence of Comcast's unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request:

A. That this action may be maintained as a class action under Rule 23(a) and (b) of the Massachusetts Rules of Civil Procedure and that reasonable notice to the Class be provided in compliance with Ma. R. Civ. P. 23(d);

B. That the Court adjudge and decree that Defendants' conduct in imposing horizontal territory, market and customer allocations by entering into agreements with competitors to "swap" cable systems and subscribers constitutes a *per se* violation of Section 4 of the Massachusetts Antitrust Act;

C. That the Court adjudge and decree that Comcast's conduct as alleged in this Complaint constitutes unlawful monopolization, or attempted monopolization, in violation of Section 5 of the Massachusetts Antitrust Act;

D. That judgment be entered against Defendants and in favor of the Plaintiffs and the members of the Class for damages as allowed by law, together with costs of suit (including expert costs), and reasonable attorney fees as provided by law;

E. That the judgment so entered include trebling of damages determined to have been sustained by Plaintiffs and the members of the Class for damages as allowed by law, together with costs of suit (including expert costs), and reasonable attorney fees as provided by law;

F. That Comcast be enjoined from continuing the unlawful monopolization, or attempt to monopolize conduct alleged in this Complaint and that Defendants be enjoined from entering into or implementing "swap" agreements allocating territories, markets or customers.

G. That the Court award Plaintiffs and members of the Class pre-judgment and post-judgment interest as permitted by law; and

H.      That the Court award Plaintiffs and members of the Class such other and further relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Massachusetts Rules of Civil Procedure, of all issues triable of right by a jury.

DATED: December 8, 2003.

John Peter Zavez (#555721)
Noah Rosmarin (#630632)
ADKINS KELSTON & ZAVEZ, P.C.
90 Canal Street
Boston, MA  02114
Tel: (617) 367-1040
Fax: (617) 742-8280

Samuel D. Heins
Stacey L. Mills
Alan I. Gilbert
Daniel C. Hedlund
David Woodward
HEINS MILLS & OLSON, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Tel: (612) 338-4605
Fax: (612) 338-4692

Barry Barnett
Max Tribble, Jr.
SUSMAN GODFREY LLP
901 Main Street, Suite 4100
Dallas, TX  75202
Tel: (214) 754-1900
Fax: (214) 754-1933

Jonathan Shaw
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3100
Seattle, WA  98101
Tel: (206) 516-3836
Fax: (206) 516-3883

Robert N. Kaplan
Gregory K. Arenson
Christine M. Fox
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

Lynn Lincoln Sarko
Mark A. Griffin
John H. Bright
Raymond J. Farrow
KELLER ROHRBACK, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

Michael Hausfeld
Stewart Weltman
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

**Counsel for Plaintiffs**

**MIDDLESEX SUPERIOR COURT**
Case Summary
Civil Docket

# MICV2003-04985
## Rogers et al v Comcast Corporation et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 12/08/2003 | **Status** | Disposed: transferred to other court (dtrans) | | |
| **Status Date** | 01/26/2004 | **Session** | J - Cv J (9B Cambridge) | | |
| **Origin** | 1 | **Case Type** | E99 - Miscellaneous | | |
| **Lead Case** | | **Track** | X | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 03/07/2004 | **Answer** | 05/06/2004 | **Rule 12/19/20** | |
| **Rule 15** | | **Discovery** | | **Rule 56** | |
| **Final PTC** | 06/05/2004 | **Disposition** | 07/05/2004 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Jack Rogers
Active 12/08/2003

**Private Counsel 555721**
John Peter Zavez
Adkins Kelston & Zavez
90 Canal Street
5th floor
Boston, MA 02114
Phone: 617-367-1040
Fax: 617-742-8280
Active 12/08/2003 Notify

**Private Counsel 630632**
Noah Rosmarin
Adkins Kelston & Zavez
90 Canal Street
5th floor
Boston, MA 02114
Phone: 617-367-1040
Fax: 617-742-8280
Active 12/08/2003 Notify

**Plaintiff**
Paul Pinella
Active 12/08/2003

**Private Counsel 555721**
John Peter Zavez
Adkins Kelston & Zavez
90 Canal Street
5th floor
Boston, MA 02114
Phone: 617-367-1040
Fax: 617-742-8280
Active 12/08/2003 Notify

**Private Counsel 630632**
Noah Rosmarin
Adkins Kelston & Zavez
90 Canal Street
5th floor
Boston, MA 02114
Phone: 617-367-1040
Fax: 617-742-8280
Active 12/08/2003 Notify

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
Case Summary
Civil Docket

# MICV2003-04985
## Rogers et al v Comcast Corporation et al

| **Defendant** | **Private Counsel 041715** |
|---|---|
| Comcast Corporation | Mark A Berthiaume |
| 1500 Market Street | Seyfarth Shaw |
| Philadelphia, PA 19102 | 2 Seaport Lane |
| Served: 12/22/2003 | World Trade Center East Ste 300 |
| Served (answr pending) 01/26/2004 | Boston, MA 02210-2028 |
| | Phone: 617-946-4990 |
| | Fax: 617-946-4801 |
| | Active 01/14/2004 Notify |
| | |
| | **Private Counsel 642094** |
| | Christopher F Robertson |
| | Seyfarth Shaw |
| | 2 Seaport Lane |
| | World Trade Center East |
| | Boston, MA 02210-2028 |
| | Phone: 617-946-4800 |
| | Fax: 617-946-4801 |
| | Active 01/14/2004 Notify |
| **Defendant** | |
| AT&T Broadband | |
| Service pending 12/08/2003 | |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 12/08/2003 | 1.0 | Complaint & civil action cover sheet filed |
| 12/08/2003 | | Origin 1, Type E99, Track X. |
| 01/13/2004 | 2.0 | Defendant Comcast Corporation's consent MOTION for additional time (ten days) within which to respond to the complaint. |
| 01/20/2004 | | MOTION (P#2) ALLOWED by consent. (Paul A. Chernoff, Justice) Dated January 20, 2004. Notices mailed January 26, 2004 |
| 01/26/2004 | 3.0 | SERVICE RETURNED: Comcast Corporation(Defendant) 12/22/03 1500 Market St. Philadelphia, Pa. 19102 |
| 01/26/2004 | 4.0 | Case REMOVED this date to US District Court of Massachusetts by defendant AT&T Broadband |
| 01/26/2004 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 03-1985 J
4985

Jack Rogers & Paul Pinella, Plaintiff(s)

v.

Comcast Corporation, Defendant(s)
and AT&T Broadband

## SUMMONS

Comcast Corporation
1500 Market Street
Philadelphia, PA 19102

To the above-named Defendant:

You are hereby summoned and required to serve upon **John P. Zavez, Adkins, Kelston & Zavez, P.C.** plaintiff's attorney, whose address is **90 Canal Street, 5th Floor Boston, MA 02114**, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at **40 Thorndike Street Cambridge, MA** either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at **Cambridge, MA**
the **8th** day of **December**, in the year of our Lord **2003**.

*[signature]*
Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER.

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 03-1985 J

MIDDLESEX , ss
[seal]

4985

Jack Rogers & Paul Pinella Plaintiff(s)

v.

Comcast Corporation and, Defendant(s)
AT&T Broadband

AT&T Broadband
1500 Market Street
Philadelphia, PA 19102

**SUMMONS**

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:

You are hereby summoned and required to serve upon John P. Zavez, Adkins, Kelston & Zavez, P.C. plaintiff's attorney, whose address is 90 Canal Street, 5th Floor Boston, MA 02114, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 40 Thorndike Street Cambridge, MA 02141 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Cambridge, MA
the 9th day of December
............, in the year of our Lord 2003.

*[signature]*
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET # **MICV2003-04985-J**

RE:  **Rogers et al v Comcast Corporation et al**

TO: Noah Rosmarin, Esquire
    Adkins Kelston & Zavez
    90 Canal Street
    5th floor
    Boston, MA 02114

## TRACKING ORDER - X TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 03/07/2004 |
| Response to the complaint filed (also see MRCP 12) | 05/06/2004 |
| All motions under MRCP 12, 19, and 20 filed | |
| All motions under MRCP 15 filed | |
| All discovery requests and depositions completed | |
| All motions under MRCP 56 served and heard | |
| Final pre-trial conference held and/or firm trial date set | 06/05/2004 |
| Case disposed | 07/05/2004 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session "J" sitting in **Rm 9B (Cambridge) Middlesex Superior Court.**

Dated: 12/10/2003

BY:

Edward J. Sullivan,
Clerk of Courts

Michael H. Powers
Assistant Clerk

Location: Rm 9B (Cambridge)
Telephone: 617-494-4010 EXT 4274

Check website as to status of case: http://ma-trialcourts.org/tcic
2483503 inidoc01 dipacee

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 03-1955 | Trial Court of Massachusetts Superior Court Department County: Middlesex |
|---|---|---|
| PLAINTIFF(S) Jack Rogers and Paul Pinella | | DEFENDANT(S) Comcast Corporation and AT&T Broadband |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE (617) 367-1040 John P. Zavez and Noah Rosmarin Adkins, Kelston & Zavez, P.C., 90 Canal St., 5th Fl., Boston, MA 02114 Board of Bar Overseers number: 551721 & 630632 | | ATTORNEY (if known) N/A |

Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| E 99 | Violation of MA Anti-Trust Act | ( X ) | (XX) Yes   ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
   Subtotal $. . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
F. Other documented items of damages (describe)
   $. . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
   Plaintiffs on behalf of themselves and the Class of those similarly situated, bring this action under the Massachusetts Anti-Trust Act and seek monetary damages and injunctive relief.   $. . . . . . . . . . . .

More than   TOTAL $ 25,000

FILED IN THE OFFICE OF THE CLERK OF THE COURTS
DEC 0 8 2003
CLERK

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL $. . . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____ DATE: 12/08/03

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET # **MICV2003-04985-J**

RE: **Rogers et al v Comcast Corporation et al**

TO: John Peter Zavez, Esquire
Adkins Kelston & Zavez
90 Canal Street
5th floor
Boston, MA 02114

## TRACKING ORDER - X TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 03/07/2004 |
| Response to the complaint filed (also see MRCP 12) | 05/06/2004 |
| All motions under MRCP 12, 19, and 20 filed | |
| All motions under MRCP 15 filed | |
| All discovery requests and depositions completed | |
| All motions under MRCP 56 served and heard | |
| Final pre-trial conference held and/or firm trial date set | 06/05/2004 |
| Case disposed | 07/05/2004 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session "J" sitting in **Rm 9B (Cambridge) Middlesex Superior Court.**

Dated: 12/10/2003

BY:

Edward J. Sullivan,
Clerk of Courts

Michael H. Powers
Assistant Clerk

Location: Rm 9B (Cambridge)
Telephone: 617-494-4010 EXT 4274

Check website as to status of case: http://ma-trialcourts.org/tcic
2483503 inidoc01 dipacee