## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACK ROGERS and<br>PAUL PINELLA,<br><br>   Plaintiffs,<br><br>v.<br><br>COMCAST CORPORATION and<br>AT&T BROADBAND,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 04-10142-EFH

## DEFENDANTS' OPPOSITION TO MOTION TO REMAND

Each Plaintiff in this action requests injunctive relief that far surpasses this Court's $75,000 jurisdictional threshold.  Ignoring the fact that Defendants *are not attempting aggregation of any kind whatsoever*, Plaintiffs' Memorandum in Support of their Motion to Remand sets-up as 'straw men' a number of arguments which Plaintiffs then proceed to knock down.  In this regard, Plaintiffs argue that no individual Plaintiff's damages will exceed $75,000, and that putative class members' requests for monetary damages and injunctive relief cannot be aggregated to satisfy the amount in controversy. *See* Plaintiffs' Mem. at 5-6, 9.  Plaintiffs further misapply Massachusetts law regarding assessment of the jurisdictional amount, and ignore (in fact, recharacterize) the injunctive relief requested in their Complaint.  Plaintiffs similarly attempt to recharacterize their own invocation of federal law, and extensive citation to reports issued by the United States Federal Communications Commission ("FCC") and the United States General Accounting Office ("GAO"), as "background intended to provide the Court with information about the context in which the dispute arose." *See* Plaintiffs' Mem. at 4.  Plaintiffs' arguments are either irrelevant or untenable, and their motion should be denied.

1.    **This Court Has Diversity Jurisdiction Because The Parties Are Diverse And The Amount In Controversy Exceeds $75,000**

This Court has diversity jurisdiction where there is diversity of citizenship among the parties, and "the matter in controversy exceeds the sum or value of $75,000 . . . ." *See* 28 U.S.C. § 1332. Plaintiffs do not dispute the diversity of citizenship among the parties to this action. Plaintiffs only dispute whether their request for relief satisfies the $75,000 jurisdictional amount. As discussed below, the relief Plaintiffs seek far surpasses this jurisdictional amount.

A.    **The Pecuniary Burden on Defendants Satisfies the Amount in Controversy[1]**

In the only two cases in which the First Circuit has addressed the issue, it expressly recognized that the jurisdictional amount may be satisfied by "the extent of the claimed pecuniary burden on defendants were plaintiffs to prevail." *Williams v. Kleppe*, 539 F.2d 803, 804 n. 1 (1st Cir. 1976); *Commonwealth of Massachusetts v. United States Veterans Administration*, 541 F.2d 119 n. 3 (1st Cir. 1976) (same). Plaintiffs dismiss *Williams v. Kleppe* and *Commonwealth of Massachusetts v. United States Veterans Administration* as "dicta," but fails to cite any other First Circuit opinion that calls into question its acceptance of the "defendant's viewpoint" approach to assessing jurisdictional amount.

Indeed, the one Massachusetts case Plaintiffs cite on this issue, *Hairston v. Home Loan and Investment Bank*, expressly contemplates the possibility that the jurisdictional amount may be satisfied by the pecuniary burden on defendants, and discusses both *Williams v. Kleppe* and

---

[1] As noted above, much of Plaintiffs' Memorandum is devoted to arguments not made by Defendants in their Notice of Removal (*e.g.* that no individual Plaintiff's damages will exceed $75,000, and that putative class members' requests for monetary damages and injunctive relief cannot be aggregated to satisfy the amount in controversy), and Defendants do not assert or address those arguments here.

*Commonwealth of Massachusetts v. United States Veterans Administration* in this regard.  814 F. Supp. 180, 181-82 (D. Mass. 1993).  Notably, Plaintiffs assert that the court in *Hairston* "reject[ed] calculation of amount in controversy from [the] defendant's perspective to avoid circumvention of [the] nonaggregation principle in class actions."  Plaintiffs' Mem. at 9.  This is incorrect.  While the *Hairston* court did decline to aggregate plaintiffs' damages — which, again, the Defendants in this action are not asking this Court to do — the *Hairston* Court expressly considered whether the pecuniary burden on the defendant with respect to each individual plaintiff's claim satisfied the amount in controversy.  814 F. Supp. at 182.  Concluding that the burden to defendant with respect to each plaintiff's claim did not satisfy the amount in controversy, the court granted plaintiffs' motion to remand.  *Id.*  In so doing, the court plainly accepted that the amount in controversy could be satisfied where each plaintiff's claim ***did*** impose a sufficient pecuniary burden on the defendant.  *Id.*

This was the situation in *Grotzke v. Kurz*, where the court upheld federal jurisdiction based upon its assessment that "the pecuniary burden on the defendant would be well in excess of the amount in controversy requirement should the plaintiffs prevail" on their request for injunctive relief.  887 F. Supp. 53, 57 (D.R.I. 1995) (discussing *Williams v. Kleppe* and *Commonwealth of Massachusetts v. United States Veterans Administration* and recognizing that "the First Circuit, on a number of occasions, has opined in favor of the 'defendant's viewpoint' approach in appropriate cases").  Plaintiffs assert that *Grotzke* stands for the proposition that "calculating the amount in controversy in class actions from the defendant's perspective 'would be in direct contravention of settled precedent.'"  Plaintiffs' Mem. at 9.  This, again, is incorrect. The *Grotzke* court did not impose a categorical ban on utilization of the "defendant's viewpoint" approach in all class action cases, it simply noted the concern expressed by the court in *Ferris v.*

*General Dynamics Corp.*, that in approaching the jurisdictional issue from the defendant's perspective, a court should not aggregate those damages as that would circumvent the non-aggregation principle. *See Grotzke*, 887 F. Supp. at 56 n. 2; *Ferris*, 645 F. Supp. 1354, 1363 (D.R.I. 1986) (declining to aggregate the cost to defendant of plaintiffs' claims, but noting "[t]here is no doubt that, in certain circumstances, it makes considerable sense to examine the amount in controversy from the defendant's viewpoint"); *see also Melnick v. Microsoft Corp.*, 2000 WL 761013, *2 n. 1 (D. Maine 2000) (dividing the cost to defendant by "the number of potential plaintiffs").

Again, these concerns are not an issue in this case as Defendants ***are not*** asking the Court to aggregate the damage to Defendants; rather, as in *Grotzke*, this Court has jurisdiction because each Plaintiff in this action is asserting an individual right to injunctive relief that far-surpasses the jurisdictional threshold.

Finally, Plaintiffs attempt to distinguish Judge Posner's opinion in *Brand Name Prescription Drugs Antitrust Litigation*, which clearly holds that the jurisdictional threshold may be satisfied where "the cost to each defendant of an injunction running in favor of one plaintiff" exceeds that threshold. 123 F.3d 599, 610 (7th Cir. 1997). In this regard, Plaintiffs argue that *Brand Name* does not allow a court to take into consideration the cost to defendant of complying with an injunction "requiring future compliance with antitrust law." Plaintiffs' Mem. at 7.[2]

---

[2] In addition to this action, Plaintiffs' counsel originally filed four other actions, virtually identical to the present action. Only one of these four actions was originally filed in state court. *See Evanchuck-Kind v. Comcast Corp.*, 03 CH 20499 (Circuit Court of Cook County, Illinois) (attached as Exhibit A). Defendants removed that action to the United States District Court for the Northern District of Illinois, and Plaintiffs' counsel did not even attempt to seek remand of that action. Instead, Plaintiffs counsel voluntarily dismissed that action, and reasserted the claims in Federal court. *See Behrend v. Comcast Corp.*, Case No. 2:03 cv 06604 (E.D. Pa.) (filed Dec. 8, 2003; amended complaint incorporating the original Illinois state court allegations filed February 20, 2004) (attached as Exhibit B).

First, as discussed below, each Plaintiff requests an injunction seeking both prospective and retrospective relief. Second, in that portion of the *Brand Name* opinion cited by Plaintiffs, Judge Posner expressly distinguished between prospective injunctive relief targeted at "price fixing" (which could not be taken into consideration in assessing the jurisdictional amount from defendant's perspective) and injunctions targeted at "structural relief" in, for example, monopolization cases (which could be taken into consideration). 123 F.3d 599, 610 (7th Cir. 1997) (*citing Grotzke*, 887 F. Supp. 53). Plaintiffs' requests for injunctive relief in this case clearly fall within the latter category, and the cost to Defendants were Plaintiffs to obtain that relief is properly considered in assessing the jurisdictional amount. As discussed below, Plaintiffs' requests for injunctive relief far exceed this jurisdictional threshold.

**B.** **Each of the plaintiffs requests injunctive relief that effectively seeks to unravel substantial portions of the multi-billion dollar merger between Comcast and AT&T**

Plaintiffs' Complaint seeks "an injunction, treble damages and other relief against Defendants." Compl. at ¶ 2. In their Memorandum, Plaintiffs state that their requests for relief merely seek "an order barring defendants from engaging in any *future* anticompetitive conduct . . . ." Plaintiffs' Mem. at 6 (emphasis in original). This assertion is belied by the express terms of their Complaint. In their Complaint, Plaintiffs request "[t]hat Comcast be enjoined from *continuing* the unlawful monopolization, or attempt to monopolize conduct alleged in this Complaint and that Defendants be enjoined from entering into or *implementing* 'swap' agreements allocating territories, markets or customers." Compl. at p. 19 (F) (emphasis added); *see also* Compl. ¶ 21(f) ("[t]he questions of law and fact common within the Class include ... whether the Class is entitled to injunctive relief as a result of Comcast's *continuing* conduct") (emphasis added).

The allegedly "anticompetitive conduct" which Plaintiffs seek to enjoin Comcast from "continuing" involves Comcast's "implement[ation]" of the agreements through which Comcast obtained AT&T cable subscribers, including the November 2002 merger agreement between Comcast and AT&T. *See* Compl. at ¶¶ 32-38. This relief is requested on behalf of each of the putative class members and each of the named plaintiffs. *Id.* If *any one* of the Plaintiffs were to obtain the requested injunction against operation and implementation of these agreements, they would effectively unravel substantial portions of the multi-billion dollar merger between AT&T and Comcast, costing Comcast well in excess of the $75,000 jurisdictional amount. *See* Declaration of Joseph M. Donnelly, at ¶¶ 5-6 (attached as Exhibit A and submitted with Defendants' Notice of Removal). Furthermore, the injunction that each Plaintiff is seeking with respect to future conduct would block Defendants from engaging in prospective transactions that create cost-savings, efficiencies and other value far in excess of $75,000.

Therefore, the amount in controversy requirement is satisfied with respect to each and every named Plaintiffs' claim as well as the claims of each and every putative class member, and this case falls within this Court's original jurisdiction under 28 U.S.C. § 1332.

**2.    This Court Has Federal Question Jurisdiction Because an Essential Element of Plaintiffs' Antitrust Claim Requires Resolution of a Substantial Question of Federal Law**

This Court has federal question jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. 1331. Even where, as here, a plaintiff's claims are asserted under state law, federal question jurisdiction exists where the state law claims require resolution of a substantial question of federal law. *See* Plaintiffs' Mem. at 3 (""The plaintiffs' cause of action must either be created by federal law, or the case must 'necessarily turn' on the construction of federal law."). *See also Franchise Tax Bd.*, 463 U.S. at 13, 27-28

(holding that district courts have federal question jurisdiction over state law cause of action where "the plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law" in that "federal law is a necessary element of one of the well-pleaded state claims."); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (applying *Franchise Tax Board* and confirming federal jurisdiction is proper where a federal issue is an element of a state cause of action and jurisdiction over the federal issue would serve congressional purposes to allow federal private remedies); *Christianson*, 486 U.S. at 808 (relying upon *Franchise Tax Board* and *Merrell Dow* in concluding that federal jurisdiction is proper where relief sought necessarily depends on resolution of a substantial question of federal law); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164 (1997) (reaffirming that a case may "arise under" the laws of the United States if it requires resolution of a substantial question of federal law, even if state law creates the plaintiff's cause of action).

Here, Plaintiffs' antitrust claims necessarily require resolution of a substantial question of federal law. Plaintiffs' claims against Comcast are expressly premised upon the allegation that Comcast violated the Cable Television Consumer Protection Act of 1992, and the Telecommunications Act of 1996. Compl. at ¶¶ 1, 23- 31. Indeed, in the very first paragraph of the Complaint, which is incorporated by reference into each Count of the Complaint, Plaintiffs allege that Comcast, and other cable companies, are violating the Cable Television Consumer Protection Act of 1992's "prohibition against exclusive cable franchises for a particular geographic area." Compl. at ¶ 1. Plaintiffs also allege that Comcast, and other cable companies, are violating the 1996 Congressional legislation "promoting competition." *Id.*; *see also* Compl. at ¶ 26 ("Despite Congress' intention of promoting competition in the cable industry to benefit the public ... in monopoly 'clusters' created by large cable companies, including

Comcast, cable prices have increased significantly ...."). Plaintiffs expressly adopt these alleged violations of Federal statutes as the basis for their antitrust claims: "Despite passage of the 1992 and 1996 Congressional legislation, large cable companies, including Defendants, have violated antitrust laws and carved out their own respective areas of operation to the exclusion of competition from other cable companies." Compl. at ¶ 1.

Thus, Plaintiffs' Complaint expressly frames substantial questions of federal law, *i.e.* whether Comcast has violated specific Federal communications statutes. Each of Plaintiffs' claims for relief are predicated upon these alleged violations and this Court, therefore, has Federal question jurisdiction.

In support of these claims, Plaintiffs rely extensively on reports issued by the Federal Communications Commission ("FCC") and the United States General Accounting Office ("GAO") on competition in the cable market and on cable prices. *See* Compl. at ¶¶ 27 (citing *In the Matter of Annual Assessment of the Status of Competition in the Market for Delivery of Video Programming, Ninth Annual Report*, MB Docket No. 02-145, released December 31, 2002 (FCC); *In the Matter of Annual Assessment of the Status of Competition in the Market for Delivery of Video Programming, Second Annual Report*, App. G at Table 2 (1995) (FCC)); 29 (citing GAO, *Report to the Subcommittee on Antitrust, Competition, and Business and Consumer Rights, Committee on the Judiciary, U.S. Senate: Telecommunications, Issues in Providing Cable and Satellite Television Service* (2002); GAO, *Report to the Chairman, Committee on Commerce, Science, and Transportation, U.S. Senate: Telecommunications, Issues Related to Competition and Subscriber Rates in the Cable Television Industry* (2003)); 30 (citing *In the Matter of Implementation of Section 3 of the Cable Television Consumer Protection and Competition Act of 1992, Statistical Report on Average Rates for Basic Service, Cable*

*Programming Service, and Equipment* (2001) (FCC); *In the Matter of Implementation of Section 3 of the Cable Television Consumer Protection and Competition Act of 1992, Statistical Report on Average Rates for Basic Service, Cable Programming Service, and Equipment* (2001) (FCC)).

Thus, as is clear from the way Plaintiffs plead their own Complaint, Plaintiffs' right to relief necessarily depends upon the resolution of substantial questions of Federal law. Plaintiffs' assertion that these allegations are merely "background intended to provide the Court with information about the context in which the dispute arose" is simply not credible when read in the context of the above allegations. *See* Plaintiffs' Mem. at 4. Plaintiffs cannot so blithely distance themselves from their own allegations.

As discussed above and in Defendants' Notice of Removal, Plaintiffs' antitrust claims challenge the November 2002 merger agreement between Comcast and AT&T, as well as alleged agreements between Comcast and AT&T regarding customer allocation pre-dating that merger. *See* Compl. at ¶¶ 32-37. Such agreements are subject to review and approval by the United States Federal Communications Commission ("FCC") under 47 C.F.R. §78.1 *et seq.* [3] Indeed, customer distribution between Comcast and AT&T pursuant to their merger was the subject of extensive evaluation by the FCC. *See In re Applications for Consent to Transfer of Control of Licenses from Comcast Corporation and AT&T Corp., Transferors, to AT&T Comcast Corporation, Transferee*, MB Docket No. 02-70 (FCC 02-310 Nov. 14, 2002) (attached hereto as Exhibit C). The FCC was charged with undertaking a "public interest evaluation" which included "preserving and enhancing competition in the relevant markets, ensuring that a diversity of voices is made available to the public, and accelerating private sector

---

[3] Defendants note that such review by the FCC provides an opportunity for public comment. *See* 47 C.F.R. §§ 78.20 and 78.22.

deployment of advanced services." *Id*, at ¶ 27 (footnote omitted). In so doing, it evaluated, *inter alia*, the prospect of "increased clustering in major markets." *Id*, at ¶ 5. After undertaking its public interest evaluation, the FCC concluded that "the positive public interest benefits promised by this merger are sufficient to support the Commission's approval ...." *Id*, at ¶ 222.

Through its review and approval of the November 2002 merger agreement, the FCC necessarily evaluated the effects of any pre-merger agreements between Comcast and AT&T affecting distribution of customers between the two entities at the time of the merger. In their memorandum, Plaintiffs' summarily dismiss these findings by asserting that their Complaint "raises no challenge to the FCC approval." Plaintiffs' Mem. at 4. As the Complaint challenges the competitive nature of the merger and pre-merger agreements between Comcast and AT&T allegedly allocating customers among them, *see* Compl. at ¶¶ 32-38, there can be no question that it amounts to a collateral attack on the FCC's decision and necessarily requires resolution of a substantial question of federal law.

As such, Plaintiffs' antitrust claims clearly require resolution of substantial questions of Federal law, this court has federal question jurisdiction over Plaintiffs' claims in addition to diversity jurisdiction, as discussed above.  Plaintiffs' motion to remand should be denied.

Respectfully submitted,

Dated:  March 5, 2004

Mark A. Berthiaume
Christopher Robertson
Seyfath Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
Telephone: (617) 946-4800
Facsimile:  (617) 946-4801

Christopher M. Curran
Jaime A. Bianchi
George L. Paul
WHITE & CASE LLP
601 Thirteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 626-3600
Facsimile:  (202) 639-9355

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail/hand on ____3/5/04____.

MARK A. BERTHIAUME