IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(BOSTON)

| | |
|---|---|
| Jack Rogers, *et al.*, | ) |
| Plaintiffs, | ) No.  04-10142 EFH <br> ) The Honorable Edward F. Harrington |
| v. | ) |
| Comcast Corporation, *et al.* | ) |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiffs respectfully submit this memorandum opposing Defendants' Motion for Protective Order.[1] Defendants (or "Comcast") have not met their burden of demonstrating good cause for a protective order. All of the topics identified in Plaintiffs' Rule 30(b)(6) deposition notice to which Defendants object are directly related to the arbitration issues raised in Defendants' Motion to Compel Arbitration. The Court has expressly authorized Plaintiffs to pursue arbitration-related discovery. Defendants' meritless motion should be denied.

## PROCEDURAL HISTORY

Plaintiffs served Defendants' counsel with an arbitration-related Rule 30(b)(6) deposition notice, together with arbitration-related interrogatories and document requests, on April 6, 2004. On April 1 and 2, 2004, similar arbitration-related discovery requests were also served on Defendants' counsel in the putative class action antitrust cases against Comcast pending before this Court and before Judge John R. Padova in the Eastern District of Pennsylvania.[2] Pursuant to Defendants' request, the depositions in these cases which were originally set for April 20 and 27,

---

[1] Plaintiffs reserve their position that this case should be remanded to the Superior Court of Middlesex County based on the lack of subject matter jurisdiction of this Honorable Court.

[2] *Martha Kristian, et al. v. Comcast Corporation, et al.*, No. 03CV12466 (D. Mass.); and *Andrew Behrend, et al. v. Comcast Corp., et al.*, No. 03-6604 (E.D. Pa.).

46736

were rescheduled for May 13 and 14 in Philadelphia. Almost six weeks after receiving the Rule 30(b)(6) deposition notices, Defendants waited until May 12, less than 24 hours prior to the commencement of the depositions, to file motions for protective orders in each case. On May 12, upon receiving Defendants' papers, Plaintiffs' counsel called Comcast's counsel and was informed that defense counsel intended to instruct the witnesses not to answer with respect to objected-to topics and that the designated deponents would not be prepared to testify about such topics due to lack of knowledge. Declaration of David Woodward ¶¶ 2-6.

At the preliminary pretrial conference on March 31, 2004, the Court expressly allowed Plaintiffs to proceed with arbitration-related discovery. The parties have stipulated that Plaintiffs shall submit their opposition to Defendants' Motion to Compel Arbitration by July 1, 2004, and the Court has so ordered. To expedite this case, permit Plaintiffs to prepare and submit their opposition to Defendants' motion to compel arbitration by July 1, 2004, and allow Plaintiffs the arbitration-related discovery to which they are entitled, Plaintiffs request that Defendants' eleventh-hour motion for a protective order be heard expeditiously and denied as unsupported in law or fact.

## ARGUMENT

### I. UNDER CONTROLLING LEGAL STANDARDS, DEFENDANTS' MOTION SHOULD BE DENIED.

As the moving party, Defendants have the burden of demonstrating particular, specific facts establishing good cause for a protective order. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986); *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1998). Under the federal rules, relevance is broadly construed, especially at the discovery stage. *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 11 (D. Mass. 1997).

Under these long settled principles, Defendants have not and cannot sustain their burden

of making a particularized showing of good cause. Each of the Rule 30(b)(6) deposition topics properly noticed by Plaintiffs and objected to by Defendants is directly relevant to the arbitration issues raised by Defendants' Motion to Compel Arbitration.

A. **PLAINTIFFS' REQUESTS FOR POLICIES AND PRACTICES PRIOR TO DEFENDANTS' ADOPTION OF ARBITRATION CLAUSES ARE DIRECTLY RELEVANT.**

Plaintiffs request deposition testimony and documents relating to the preparation and dissemination of documents relating to Comcast's policies and practices, including "those concerning the origination, implementation, enforcement of or compliance with any arbitration provision" and for mailings or other documents informing its cable customers of any changes in Comcast's policies and practices, including "the adoption, existence, changes in or contents of any arbitration provision." Notice of Rule 30(b)(6) Deposition, Deposition Topics 1 and 3; Requested Documents 1-3. Defendants concede that the issue of "whether Plaintiffs entered into a valid arbitration agreement" is within the proper scope of discovery, but argue that "past policies do not impact on whether there is a valid arbitration agreement...." Defendants' Memorandum ("Defs. Memo."), 5-6. Defendants are wrong as a matter of law.

Under the Federal Arbitration Act, a court may compel arbitration only "upon being satisfied that the making of the agreement for arbitration...is not an issue." 9 U.S.C.A. §4. The Supreme Court has held that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 682, 116 S.Ct. 1652, 1653 (1996). The existence of a valid arbitration agreement is a predicate threshold issue, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Communications*

*Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 3346 (1986). The principle that a party cannot be compelled to arbitrate absent a lawful agreement to arbitrate is fundamental. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924 (1995) ("arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.")

Defendants maintain that they imposed arbitration provisions on their Boston area cable customers by mailing a "Policies & Practices" document containing an arbitration provision with AT&T Broadband's mailing during the end of November 2002 and the beginning of December 2002 and in Comcast's monthly cable bills during the end of November 2003 and the beginning of December 2003. Defs.' Motion To Compel Arbitration, Affidavit of William Devine ¶ 4. Defendants purport to impose their arbitration provisions based on the silence of its customers (failure to cancel), without requiring any affirmative consent on the part of the customer. *See, e.g.,* "Policies & Practices" at 1; Devine Aff., Exs. A and B; Defs.' Memorandum in Support of Amended Motion to Compel Arbitration, at 3.

Plaintiffs' Rule 30(b)(6) deposition notice requests testimony and documents relating to Defendants' "Policies & Practices" pre-dating Defendants' adoption of an arbitration provision bear directly on the core issue of whether there exists any valid agreement to arbitrate any of Plaintiffs' claims. Defendants have the burden of proving the existence of agreements to arbitrate. For months, Plaintiffs have repeatedly requested that Defendants produce previous "Policies & Practices" that Defendants claim to have provided to each of the named plaintiffs and the dates Defendants claim such documents were provided. Woodward Decl. ¶ 7, and attached Exs. A - J. Defendants promised that they would do so but have failed to produce such previous agreements and the dates Defendants maintain they were provided to Plaintiffs. *Id.*

Defendants now object to doing so. Plaintiffs' requests are obviously relevant to the threshold issue of the existence and content of a valid agreement to arbitrate, specifically including whether such past "Practices & Policies" or similar documents allowed for the subsequent material modification of imposing an arbitration clause and, if so, in what manner. This discovery clearly is relevant to the validity of Defendants' recent attempt to subject the named Plaintiffs to Defendants' arbitration provisions.

Defendants further object to Plaintiffs' requests relating to pre-arbitration annual form "Policies & Practices" on grounds that the requests include such documents since 1989. Defs.' Memo, 3, 5.[3] The named Plaintiffs have been customers for a number of years of AT&T Broadband and, following its merger with Comcast on November 18, 2002, of Comcast. For example, Plaintiff Paul Pinella has been Defendants' cable customer since April 8, 1991. Plaintiffs' requests for information about Defendants' past mailings describing their terms and conditions of service appropriately seek directly relevant information. The existence and content of earlier terms and conditions are crucial to determining whether earlier contracts with customers existed and allowed for modification and, if so, permitted Defendants to materially change the terms of the agreement and, if so, in what manner. Additionally, for unconscionability analysis, the dealings between the parties and circumstances existing at the time a contract was formed are relevant considerations. *See, e.g., McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1272 (Pa. Super. 2004) (finding arbitration clause unconscionable and noting

---

[3] Defendants cite *Barron v. Caterpillar, Inc.* 168 F.R.D. 175 (E.D. Pa. 1996) in support of their contention that "parties seeking discovery should not expect to obtain discovery on extraneous matters, such as facts going back more than 15 years." Defs.' Memo, 3. *Barron* does not support Defendants' position. That products liability case involved a piece of equipment manufactured in 1969. The issue was whether another R. 30(b)(6) deponent should be designated when the first could not provide complete responses. The court simply noted that the parties should not be surprised about the unavailability of certain information about the machine, given the passage of time and its effects on the witness's memory. *Id.* at 177. While not requiring the deposition of a second corporate witness, the court allowed plaintiff to proceed with alternative discovery of the information, despite the fact that it reached back over 20 years.

46736                                     5

that "[i]n analyzing the contract, we must take care to note the surrounding circumstances, the situation of the parties when the contract was made, and the objects they apparently had in view and the nature of the subject matter"). Finally, the course of dealings between Defendants and their cable customers is relevant to whether the Defendants' attempt to unilaterally change the terms of their legal relationship with their customers – via materially altering the terms of their customer agreements through an arbitration provision tucked away as part of a bill stuffer, consent to which Defendants deemed to arise from receipt and silence by its customers – resulted in a valid agreement. Surprise is one factor in determining unconscionability. *Gutierrez v. Autowest, Inc.*, 7 Cal.Rptr.3d 267, 275 (Ca. Ct. App. 2003). So, too, are consumers' expectations. *See, e.g., Ting v. AT&T,* 182 F. Supp.2d 902, 930 (N.D. Ca. 2002) (striking down as unconscionable AT&T arbitration provision and observing that "a typical consumer did not expect to receive a new contract from AT&T, let alone one which conditioned acceptance on a negative option"), *aff'd in part,* 319 F.3d 1126 (9th Cir. 2003), *cert. denied,* 124 S.Ct. 53 (2003).

In addition, such discovery requests are relevant to the issue of whether Plaintiffs validly assented to Defendants' purported changes to the preexisting cable subscribership. Courts have determined that the addition of an arbitration clause is a material alteration to the original agreement which must be supported by the express assent of the parties and, therefore, that silence alone is insufficient. *See, e.g., Coastal Industries, Inc. v. Automatic Steam Prods. Corp,* 654 F.2d 375, 379 (5th Cir. 1981) (finding that where an arbitration clause was included with an invoice for goods, buyer's retention of the goods was not express assent to the clause and therefore the clause was not binding); *Diskin v. J.P. Stevens & Co.,* 836 F.2d 47 (1st Cir. 1987) (finding that under New York law, an arbitration clause is a material addition binding only if expressly assented to by both parties and rejecting silence as consent).

46736

The California Court of Appeals has refused to enforce arbitration clauses sent through bill stuffers. In *Badie v. Bank of America*, 67 Cal.App.4th 779 (1998), the court reversed a district court ruling that a "change of terms" provision in the underlying credit card agreement rendered an arbitration clause sent through a bill stuffer enforceable. The court found that an arbitration provision was an "added" term and not a "change of terms" as provided in the original agreement. *Badie,* at 803 ("when the account agreements were entered into, the parties did not intend that the change of terms provision should allow the Bank to add completely new terms such as an ADR clause simply by sending out a notice.") In *Discovery Bank v. Shea*, 827 A.2d 358, 362 (N.J. Super. 2001), the Superior Court of New Jersey determined that a bill stuffer attempting to amend a credit card agreement to include an arbitration provision was unenforceable. The court determined that the underlying credit card agreement did not contain any provisions regarding dispute resolution and, therefore, the addition of an arbitration clause was not a "change of terms" and thus was not permissible under the agreement's "change of terms" provision. *Id.,* at 206. Similarly, in *Sears Roebuck and Co. v. Avery*, 593 S.E.2d 424, 434 (Ariz. Ct. App. 2004), the court also found that an arbitration provision sent to a credit card holder was unenforceable where the original agreement's "change of terms" did not address dispute resolution forums.

Thus, Plaintiffs' deposition topics and document requests relating to information about Defendants' past "Policies & Practices" mailings, sent to customers before Defendants' adopted arbitration provisions, are relevant and entirely appropriate.

B. **DEFENDANTS' OBJECTIONS TO RESPONDING TO RELEVANT ARBITRATION-RELATED DISCOVERY CONCERNING THE COSTS OF ARBITRATION ARE MERITLESS.**

Plaintiffs request deposition testimony concerning the costs of arbitration, including the

expenses or costs of arbitrators. Deposition Topic 13. Defendants object, again on relevance grounds. Defs.' Memo, 12. Again, Defendants are simply wrong.

Whether Plaintiffs may vindicate their statutory antitrust claims through arbitration under the terms of Defendants' arbitration provisions is not only relevant, but crucial to the issue of the validity and enforceability of the arbitration provisions Defendants seek to enforce. The Supreme Court has indicated that arbitration is only appropriate if it provides an effective opportunity to vindicate the prospective plaintiff's statutory rights. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler Plymouth*, 473 U.S.C. 614, 637, 105 S. Ct. 3346, 3359 (1985). In *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513, 522 (2000), the Supreme Court recognized that "it may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her statutory rights in the arbitral forum." The Third Circuit has held that "arbitration is only appropriate 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 605 (2002) (citations omitted). In *Blair*, the Third Circuit permitted discovery into the estimated costs of arbitration, recognizing that such discovery is appropriate in order to allow the claimant to meet her burden under *Green Tree Financial Corp.-Alabama* of demonstrating that the arbitration forum does not allow for vindication of statutory rights. *Id.*

Defendants object to providing information concerning arbitration costs here on grounds that the fee schedules of the arbitration providers are accessible to both parties. Defs.' Memo, 13. Defendants' arguments are unpersuasive. Plaintiffs seek information concerning the full costs of arbitration, including the significant costs and expenses of the arbitrators themselves. Such information is not available from arbitration providers' published fee schedules.

46736

8

Declaration of Jessica N. Servais ¶ 3; s*ee also Ting v. AT&T*, 182 F. Supp. 2d at 934, n. 20 ("a search of the AAA website adr.org. disclosed AAA's fees but no information about typical arbitrators' fees.") Even if information concerning the costs and expenses of arbitrators were available from arbitrator providers' published fee schedules, which they are not, the fact that information is available from other sources is not a valid ground for objection. *Petruska v. Johns-Manville*, 83 F.R.D. 32, 35 (E.D. Pa. 1979) ("But it is 'not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.'" (citing 8 Wright & Miller, Federal Practice and Procedure, Civil § 2014 at 111)).

Such arbitrator cost information is obviously relevant to the core issue of whether Plaintiffs may effectively vindicate their claims through arbitration under Defendants' arbitration provisions. *See McNulty v. H&R Block*, 843 A.2d at 1273 ("[I]f the costs associated with arbitration of a single claim would operate to preclude a claimant from pursuing a remedy, then the enforcement of the provision would be unconscionable.")

### C. PLAINTIFFS' DEPOSITION TOPICS AND DOCUMENT REQUESTS FOR INFORMATION ABOUT DEFENDANTS' EMPLOYEES WITH AUTHORITY TO ADOPT OR CHANGE DEFENDANTS' POLICIES, AND ABOUT TRAINING EMPLOYEES AND RESPONDING TO CONSUMER INQUIRIES AND COMPLAINTS ABOUT ARBITRATION, ARE CLEARLY RELEVANT.

Plaintiffs' deposition notice asks for testimony and documents about Defendants' employees involved in making the decision to adopt or change their practices or policies, including the arbitration provisions; Defendants' representatives with authority to change the language of their policies and practices documents, including the arbitration provisions; training employees and informing customers about Defendants' arbitration provisions; and responding to inquiries or complaints about the arbitration provisions. Notice of Rule 30(b)(6) Deposition, Deposition Topics 2 and 10; Requested Documents 6, 7, 8 and 11. Defendants object on grounds

46736

9

that the requests are "overly broad" and irrelevant. Defs.' Memo, 6-9. On the contrary, each of these areas is not overly broad and is directly relevant to issues raised by Defendants' Motion to Compel Arbitration.

Defendants' employees with decision making authority concerning changes in their practices and policies, including the arbitration provisions, are in the best position to provide relevant testimony concerning the manner in which Defendants chose to communicate their arbitration provisions, the intended scope of the arbitration clauses, the terms of previous policies and practices and the purpose of imposing arbitration provisions upon Defendants' customers. *See Ting v. AT&T*, 182 F. Supp. 2d, at 935, 939 (noting "AT&T's overriding purpose of deterring litigation" and "that AT&T wants to make it very difficult for anyone to effectively vindicate her rights, even in that [arbitration] forum. That is illegal and unconscionable and must be enjoined.") Plaintiffs' request for information concerning employees with authority to change the terms of Defendants' arbitration clauses is equally relevant. Whether consumers have been able to effect changes in Defendants' arbitration clauses bears directly on whether the documents containing Defendants' arbitration provisions are contracts of adhesion. *See, e.g., McNulty v. H&R Block, Inc.*, 843 A.2d at 1273 (finding arbitration clause unconscionable as a "classic example of an adhesion contract" in that the consumer had little choice regarding acceptance of the terms); *Ting v. AT&T*, 182 F. Supp. 2d at 928 (finding arbitration clause procedurally unconscionable in part because the agreement was a contract of adhesion drafted by the party possessing superior bargaining strength and "imposed on the class members without an opportunity for negotiation, modification or waiver.")

Plaintiffs are entitled to inquire as to whether Comcast employees were trained to orally inform consumers of the terms of its "policies and practices," including Comcast's arbitration

46736

10

provisions and whether Defendants otherwise brought the arbitration provision to the attention of their cable customers. Similarly, the extent to which customers may obtain information concerning Comcast's arbitration provisions by contacting Comcast and Comcast's practices in responding to inquiries or complaints about its arbitration provisions, are clearly relevant. *See Ting v. AT&T*, 182 F. Supp. 2d at 914 ("class members calling with questions ... were unlikely to get meaningful answers.... AT&T's customer representatives and their supervisors were instructed not to discuss arbitration.")

### D. PLAINTIFFS' DISCOVERY REQUESTS FOR INFORMATION CONCERNING LAWSUITS INVOLVING DEFENDANTS AND THEIR CABLE CUSTOMERS IS RELEVANT TO THE PURPOSES AND VALIDITY OF THE ARBITRATION PROVISIONS.

Defendants object to Plaintiffs' requests for information concerning lawsuits involving Comcast and its cable customers, including lawsuits against Comcast by cable customers during the three year period prior to Comcast's adoption of its arbitration provisions. Deposition Topics 8 and 9; Defs.' Memo, 9-10. Such information is clearly within the permissible scope of arbitration-related discovery for several reasons. First, such litigation is relevant to the issue of Comcast's reasons for adopting arbitration provisions, including potentially insulating itself from liability for alleged unlawful practices. Second, information concerning such litigation is relevant to the issue of whether Plaintiffs are able to vindicate their statutory rights in the arbitration forum as an alternative to pursuing judicial remedies against Defendants. For example, in *Ting v. AT&T*, the district court referenced lawsuits filed in recent years against the defendant and the types of claims involved in such litigation. The court concluded that it would not have been economically feasible to pursue such cases on an individual basis and that, given AT&T's arbitration provision prohibiting proceeding in arbitration on a class basis, "it is highly unlikely any of the claims would have been prosecuted." *Ting*, 182 F. Supp. 2d at 918. The *Ting*

court further observed: "Thus, the prohibition on class action litigation functions as an effective deterrent to litigating many types of claims ... and, ultimately, would serve to shield AT&T from liability even in cases where it has violated the law." *Id.* Defendants' arbitration provisions prohibit class action claims in arbitration. Devine Aff., Ex. A ¶ 10, Ex. B ¶ 10. Third, information concerning Defendants' lawsuits against their customers bears directly on the issue of whether Defendants' arbitration provisions, which allow Defendants to sue customers for various claims, including for nonpayment of cable bills (*id.*), are unfair and one-sided not only on their face but in their implementation. In analyzing whether a contract is unconscionable, courts consider whether the contractual terms unreasonably favor the drafter. *See, e.g., McNulty v. H&R Block, Inc.*, 843 A.2d at 1273.

E.  **PLAINTIFFS' REQUEST FOR COMMUNICATIONS WITH OTHER CABLE COMPANIES CONCERNING ARBITRATION PROVISIONS, ARBITRATION PROVISIONS OF COMPETITOR COMPANIES AND COMMUNICATIONS WITH ARBITRATION PROVIDERS ARE RELEVANT TO DEFENDANTS' MOTION TO COMPEL ARBITRATION.**

Plaintiffs' Rule 30(b)(6) deposition notice seeks information about any communications by Defendants with other cable companies concerning cable arbitration provisions, meetings attended by Comcast at which arbitration clauses were discussed and communications between Comcast and employees or arbitrators associated with the three arbitration providers (American Arbitration Association, Judicial Arbitration and Mediation Services, and National Arbitration Forum) listed in certain of the arbitration provisions Defendants seek to enforce. Deposition Topics 4, 5 and 6; Requested Documents 5 and 10. Plaintiffs also request information concerning arbitration provisions used by any competitor company. Deposition Topic 11. Once again, Defendants object on grounds of relevance. Defs.' Memo. 3, 10-11. Once again, Defendants' objection is without basis.

In their Amended Motion to Compel Arbitration, Defendants maintain, without any citation to supporting evidence, that arbitration "agreements are common in the cable television industry." Defs. Amended Motion to Compel Arbitration, 7. Plaintiffs are entitled to obtain discovery related to this statement. The extent to which Defendants' cable customers have meaningful choices is relevant to issues of unconscionability. *See, e.g., McNulty*, 843 A.2d at 1273.

Furthermore, communications between Defendants and the arbitration providers listed in Defendants' arbitration provisions are relevant to issues of potential bias. Discovery regarding the arbitration forums' potential bias is relevant in determining whether an arbitration clause is enforceable. "The specific arbitral forum provided under an arbitration agreement must . . . allow for the effective vindication of [a party's] claim." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir.2000); *see also, Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647 (1991) (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). If the arbitration forum is biased, it would conflict with the FAA's purpose of providing an appropriate alternative forum for plaintiffs' claims. *See Cole v. Burns Int'l Sec. Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) ("At a minimum, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections"). In determining whether an arbitration forum will vindicate a party's statutory rights, a court must consider "such factors as the neutrality of the forum, evidence of bias, parties' opportunities for discovery, cost-splitting provisions, limitations on remedies, and the arbitrator selection process." *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 923 (M.D. Tenn. 2003). Courts have allowed such discovery prior to deciding a motion to compel arbitration. *See, e.g., Mintze v. American*

*General Finance, Inc.*, 288 B.R. 95 (Bkry. Ct. E. D. Pa. 2003) (discovery allowed into arbitrators' potential bias in favor of creditor); *Toppings v. Meritech Mortgage Services, Inc.*, 140 F. Supp. 2d 683, 685 (S.D. West Va. 2001) ("the Court believes additional factual development is warranted particularly ... on both the issues of unconscionability and the impartiality and other challenges to the NAF as the chosen arbitral forum"); *Patterson v. ITT Consumer Financial Corp.*, 18 Cal. Rptr. 2d 563, 566 (Ca. App. 1993) (finding NAF's procedures had the likely effect of denying borrower any opportunity for a hearing and arbitration provision in loan agreement was unconscionable).

## CONCLUSION

For the above reasons, Defendants' motion for a protective order should be denied.

Dated: May 19, 2004

_____
John Peter Zavez (#555721)
Noah Rosmarin (#630632)
ADKINS KELSTON & ZAVEZ, P.C.
90 Canal Street
Boston, MA 02114
Tel: (617) 367-1040
Fax: (617) 742-8280


_____
Samuel D. Heins
Stacey L. Mills
Alan I. Gilbert
Daniel C. Hedlund
David Woodward
HEINS MILLS & OLSON, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 338-4605
Fax: (612) 338-4692

46736

Ann D. White
Carol A. Mager
MAGER WHITE & GOLDSTEIN, LLP
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA 19046
Tel: (215) 481-0273
Fax: (215) 481-0271

Barry Barnett
Max Tribble, Jr.
SUSMAN GODFREY LLP
901 Main Street, Suite 4100
Dallas, TX 75202
Tel: (214) 754-1900
Fax: (214) 754-1933

Jonathan Shaw
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3100
Seattle, WA 98101
Tel: (206) 516-3836
Fax: (206) 516-3883

Robert N. Kaplan
Gregory K. Arenson
Christine M. Fox
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

Lynn Lincoln Sarko
Mark A. Griffin
John H. Bright
Raymond J. Farrow
KELLER ROHRBACK, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

Michael Hausfeld
Stewart Weltman
COHEN, MILSTEIN, HAUSFELD

46736

& TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699

**Counsel for Plaintiffs**

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on this date 5/19/04

*[signature]*

→ to defendants' local counsel.

46736