UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jack Rogers and Paul Pinella, ) | |
| ) | Civil Action No.: 04-10142 EFH |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Comcast Corporation ) | |
| and AT&T Broadband, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF J. OWEN TODD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

I, J. Owen Todd, Esquire, state under the pains and penalties of perjury that the following is true and accurate and based upon personal knowledge.

1. I am a member in good standing of the bar of this Court, and I have been retained as an expert witness by plaintiffs in this case.

2. A true and accurate copy of my resume is attached as Exhibit 1.

3. In my position as a founding partner of the law firm of Todd & Weld, I oversee in some fashion the work of approximately 20 litigators. As a Massachusetts Superior Court Justice or an attorney, I have personally tried or presided over hundreds of civil cases to completion in a wide variety of areas and believe my area of expertise to be civil trial practice. I have been involved in a number of complex commercial cases, antitrust cases and class actions. I have served as a Commissioner of the State Ethics Commission for the Commonwealth of Massachusetts and I have been qualified as an expert by federal and state courts in the area of legal ethics (including the reasonableness of attorney fees) and trial practice.

47283

4. In the above captioned matter, I have reviewed plaintiffs' class action Complaint, Defendants' Motion To Compel Arbitration and the exhibits thereto and other documents relative to defendants' arbitration demand, including without limitation, Comcast's and AT&T Broadband's "Policies and Practices" documents concerning their requirement that all disputes be resolved on an individual basis through arbitration. True and accurate copies of these documents are attached as Exhibit 2 (AT&T Broadband's "Policies and Practices") and Exhibit 3 (Comcast's "Policies and Practices").

5. I do not believe that plaintiffs or other aggrieved Comcast or AT&T Broadband cable subscribers would be able to vindicate their statutory rights through arbitration on an individual basis under Comcast's and AT&T Broadband's arbitration requirements contained in their "Policies and Practices" documents. Comcast's and AT&T Broadband's arbitration provisions contain the following limitations:

   a. the arbitration provisions prohibit proceeding in arbitration on a class-wide basis;

   b. the arbitration provisions require the consumer/subscriber to pay "all costs that you incur in the arbitration, including, but not limited to, your expert witnesses or attorneys" (Exhibit 1, ¶ 10; Exhibit 2, ¶ 10);

   c. the arbitration provisions shorten the statute of limitations to one year by requiring the consumer/subscriber to contact Comcast within one year of the date of the occurrence underlying the dispute and providing that the consumer/subscriber waives the right to pursue his or her claim in the event the consumer/subscriber fails to do so; and

   d. the arbitration provisions state that the customer/subscriber's right to take discovery may be limited in arbitration.

6. The practical effect of these provisions is to preclude a consumer/subscriber from vindicating their statutory antitrust rights through arbitration and to make it financially unfeasible for the consumer/subscriber to pursue such rights, for several reasons.

   a. <u>Obtaining Counsel</u>: Retaining private counsel to pursue an individual antitrust claim in arbitration under Comcast's and AT&T

2

Broadband's arbitration clauses, particularly where, as in this case, the value of the individual subscriber's claim is likely to be only a fraction of the cost of his/her attorney fees, makes obtaining private counsel an unrealistic option. Moreover, due to the small monetary value of an individual claim in a case like the one involved here, it is unrealistic that an individual consumer/ subscriber would be able to find an attorney willing to take this case on a contingency fee basis. Furthermore, because of the complexity of antitrust cases, the individual consumer/subscriber's case would be extremely compromised without adequate legal representation;

b.  <u>Prohibitive costs</u>: Pursuant to the arbitration provisions, the individual consumer/subscriber would be responsible for retaining expert witnesses, which is necessary to properly maintain an antitrust claim. Successful prosecution of the antitrust claims asserted by plaintiffs in the above-captioned action will necessitate tremendous resources and sums of money. To successfully pursue their antitrust claims, plaintiffs will require expert witnesses to address the multiple tasks and functions involved in such antitrust litigation, including, without limitation, defining the relevant product market; defining the relevant geographic market; establishing the market power of defendants and the manner in which they exercised such power; the effects of potential competition within the relevant markets; the impact of conduct of any non-incumbent cable providers in the relevant market; analyzing the "swapping" agreements alleged in the Complaint, as well as merger and purchase of asset transactions that defendants may have been involved in relating to the alleged monopolization conduct; reviewing and analyzing the increases in cable subscription rates over time; establishing Comcast's alleged monopoly overcharges in the relevant markets; and further calculating the named plaintiffs' damages.

Due to the small value of the individual consumer/subscriber's claim, retaining expert witnesses is completely unrealistic and impractical on an individual claim basis. Furthermore, due to the complexity of antitrust cases, including a case of this kind, the individual consumer/subscriber's case would be extremely compromised, and effectively precluded, without the testimony of expert witnesses.

I would estimate that plaintiffs' antitrust claims would require at least twenty (20) full days of hearings in an arbitration proceeding of this complexity.

7.  Support for my position that Comcast's and AT&T Broadband's arbitration clauses prevent plaintiffs from vindicating their statutory antitrust rights is found in a Ninth Circuit Court of Appeals' opinion upholding a district court decision that the bulk of a

3

mandatory arbitration clause, contained in a contract for telephone services and virtually identical to the "Policies and Practices" documents at issue here, was both procedurally and substantively unconscionable. See Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003) (attached hereto as Exhibit 4). The court found multiple provisions of the "Consumer Services Agreements" procedurally unconscionable in that their terms, like the terms of the "Policies and Practices" documents, were imposed on customers on a "take it or leave it basis" – without opportunity for negotiation, modification or waiver. Ting, 319 F.3d at 1149. Invalidating the agreement's ban on class actions, the court pointed to its one sidedness, noting that it was difficult, if not impossible, to imagine AT&T bringing a class action against its own customers. It is equally difficult to imagine that Comcast would bring a class action against its customers. Id. at 1150. See also Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1101 (2002) (credit card company's attempt to bar class arbitration in contract of its own drafting invalidated because it "sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights"); Discover Bank v. Shea, 362 N.J. Super 200, 212, 877 A.2d 358, 366 (N.J. Super. 2001) (relying on ban on class actions in arbitration clause, court invalidated arbitration provision, and stated "[w]hile Discovery can use the provision to preclude class actions and therefore effectively immunize itself completely from small claims, individuals gain nothing, and in fact, are effectively deprived of their small individual claims."); Luna v. Household Fin. Corp. III, 236 F. Supp. 2d 1166, 1178-1179 (W.D. Wash. 2002) (class action bar substantively unconscionable because plaintiffs "effectively may be prevented from vindicating their rights."); Powertel Inc. v. Bexley, 743 So.2d 570 (Fla. Dist. Ct. App. 1999) (arbitration clause unenforceable, in part, because it barred class action litigation, "the most economically feasible remedy for the kind of claim that has been asserted" where "the potential claims are too small to litigate individually"); Bailey v. Ameriquest Mort. Co., No.

CIV. 01-545, 2002 WL 1835642, at * (D. Minn. Aug. 5, 2002) (arbitration clause containing class action bar unenforceable where "the amount of recovery ... will be so small" that the plaintiff "will be tempted to abandon the vindication of his right"). Accordingly, I believe the manifestly one-sided ban on class actions "brought in a purported representative capacity on behalf of the general public (such as a private attorney general), other subscribers, or other persons similarly situated" to be an insurmountable barrier to plaintiffs in securing their statutory rights. The class action prohibition by itself clearly precludes plaintiffs from vindicating their antitrust claims and renders Comcast's and AT&T Broadband's arbitration clauses invalid and unenforceable. In addition, the other provisions of the arbitration clauses discussed in my declaration further prevent plaintiffs from vindicating their statutory rights.

8. Thus, the named plaintiffs would not be able to vindicate their statutory antitrust claims under the arbitration clauses of Comcast and AT&T Broadband. This effect is further exacerbated by the limitation of damages provision in Comcast's and AT&T Broadband's "Policies & Practices" documents (¶ 8). Due to the fact that Comcast's and AT&T Broadband's "Policies and Practices" limit an individual consumer/subscriber's damages to his/ her actual damages – which are likely to be only a percentage of his/her monthly cable bill – and prohibit the recovery of other damages, including treble damages and attorneys' fees otherwise available under the antitrust laws, it is simply not practical to expect an individual consumer/subscriber or an attorney to pursue arbitration when the costs and expenses to do so would be infinitely greater than any possible recovery.

9. Additionally, plaintiffs would be further effectively precluded from vindicating their statutory antitrust claims in arbitration under the limited discovery available in arbitration proceedings. This complex antitrust litigation will require the full array of open and liberal discovery rights and methods provided for under the Rules of Civil Procedure. Plaintiffs could

not effectively pursue their antitrust claims without access to such discovery. Discovery is restricted in arbitration and consequently does not afford plaintiffs adequate opportunity to vindicate their claims.

10. I also note that, in my view, the provision in the arbitration clause to the effect that aggrieved customers must contact Comcast within one year of "the occurrence of the event or facts giving rise to a dispute" or have no recourse whatsoever not only further prevents plaintiffs from securing their full rights and remedies provided for under the antitrust laws, but is contrary to Massachusetts law. Massachusetts law provides that a statute of limitations begins to run on the date of *injury*, not the date of occurrence or the date when facts give rise to a dispute. See Riley v. Presnell, 409 Mass. 239, 240 (1991) (cause of action does not accrue until one knows, or should have known, of *injury*); Zereski v. American Postal Workers Union, 9 Mass. L. Rptr. 55 (Mass. Super. 1998) (running of statute of limitations delayed while wrong is unknown). See also Ingle v. Circuit City Stores Inc., 328 F.3d 1165, 1175 (9th Cir. 2003) (party, in the context of a mandatory arbitration agreement with its employees, may not insulate itself from liability for damages by providing for statute of limitations that would deny to aggrieved parties the possibility of relief under the continuing violations doctrine). The first date in the arbitration provisions ("the occurrence of the events") is legally insignificant because the occurrence of an event can obviously predate an injury and the second "time frame" ("the … facts giving rise to the dispute") is so amorphous that it would be virtually impossible to determine the extent of the limitations period. Again, the benefit of the statute of limitations runs solely to Comcast, while the entirety of the detriment is absorbed by the consumer. In my opinion, this disparity further renders the arbitration clauses, including the statute of limitations restrictions, unenforceable.

11. In sum, the economic realty of the market for legal services is such that an individual consumer/subscriber's claims of the kind involved in this case will not be brought if

6

they cannot be pursued on a class-wide basis. The other terms of the arbitration clause referred to above make an individual claim even less viable. It is simply cost prohibitive for a consumer to bring such a claim on an individual basis under Comcast's or AT&T Broadband's arbitration clauses.

12.   Thus, plaintiffs and the putative class members will have no remedy for the injuries they have sustained and will be foreclosed from pursuing the rights and remedies afforded to them under the antitrust laws.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, THIS 25th DAY OF JUNE 2004.

*J. Owen Todd*

J. Owen Todd

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail ~~(by hand)~~ on this date _____.

*[signature]*