UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jack Rogers and Paul Pinella, ) | Civil Action No.: 04-10142 EFH |
| Plaintiffs, ) | |
| v. ) | |
| Comcast Corporation ) and AT&T Broadband, ) | |
| Defendants. ) | |

### DECLARATION OF JOHN C. BEYER, PH.D.

I, John C. Beyer, Ph.D., declare that the following is true and accurate and based on my personal knowledge:

1. I am John C. Beyer, economist and President of Nathan Associates Inc., an economic and financial consulting firm established in 1946 that provides applied economic research and analysis to public and private clients in the United States and abroad.

2. I have been associated with Nathan Associates as an economist for 30 years. I have also been employed by the Ford Foundation, conducted research at the Brookings Institution, and continue to serve as an Adjunct Professor at American University in Washington, D.C. I received the degree of Bachelor of Arts from the University of the Pacific in 1962 and the degree of Doctor of Philosophy from the Fletcher School of Law and Diplomacy, Tufts University, in 1996.

3. My experience includes a wide range of economic consulting and analytical work, involving both litigation and non-litigation consulting. My economic work in litigation particularly has focused on antitrust cases in a wide range of industries. This work has included matters concerning the structure and conduct of industries, the determination of economic impact, and the

47343

estimation of damages. In several instances, such analyses have concerned the issues of impact upon multiple plaintiffs and plaintiff classes, and the development of class-wide approaches that can be applied to the assessment of damages for each class member. I have provided economic analyses of impact and damages in numerous antitrust class action cases; recent examples include: *In re Linerboard Antitrust Litigation*, MDL 1261 (E.D. Pa. 2002); *In re Monosodium Glutamate Antitrust Litigation*, MDL 1328 (D. Minn. 2002); *Chase v. Northwest Airlines Corporation*, 49 F. Supp. 2d 553 (E.D. Mich. 2002); and *D. Lamar DeLoach, et al., v. Philip Morris Companies, et al.*, (M.D. NC 2002).

4.  I have also had responsibility for economic analysis and testimony in complex antitrust cases on behalf of individual firms. On behalf of Litton Systems, I estimated damages arising from monopolistic conduct by Honeywell in the commercial jet inertial reference systems market. On behalf of National Steel and Sharon Steel companies I analyzed how these companies were injured by the conspiratorial conduct of the defendant railroads and calculated damages for the companies. In *Complete Newborn Care, P.C. v. Danbury Hospital* (D. Conn. 1994), I defined the relevant product and geographic markets and assessed the anticompetitive impact on consumers of a tying arrangement between the hospital's neonatal intensive care unit and services of neonatologists.

5.  A description of my education, professional experience as an economist, publications, and affiliations is attached as Appendix A.

6.  I have been asked by counsel to the plaintiffs to estimate the approximate costs involved for the retention of an expert economist in this matter. I have reviewed Plaintiffs' Class Action Complaint for Violations of the Massachusetts Antitrust Act and Jury Demand in this matter. The principal tasks required in this antitrust matter by an expert economist include:

- defining the relevant geographic and product markets;

47343                                   2

- determining whether Comcast has market (monopoly) power in these markets, which in turn requires quantification of market share and analysis of entry barriers;
- whether Comcast has exercised its market (monopoly) power (i.e., has there been an anticompetitive effect?); and
- quantifying the dollar amount of damages. The principal and most demanding facet of this task is estimating the price for cable services in the relevant time period but for the anticompetitive action(s) of the defendants.

7. As applied in this action, these tasks would involve analyzing the economic characteristics of Comcast's Boston area cluster; defining the relevant product market; defining the relevant geographic market; assessing Comcast's market power; evaluating the effects of potential competition; determining barriers of entry into the market; assessing the impact of any competitors, including "overbuilders" of cable systems, in penetrating the relevant geographic market; reviewing the various "swapping" agreements, asset purchases, mergers and similar transactions that Comcast used to monopolize its Boston cluster; determining the increases in Comcast's cable subscriber rates in the relevant market; and calculating damages, including, without limitation, monopoly overcharges over time. Such tasks would entail careful review and analysis of likely voluminous materials and documents.

8. My estimate of the professional service costs to perform these tasks, together with additional resources to undertake the necessary research and analysis in response to any expert economic analysis Comcast may submit, and testifying in an arbitration proceeding, would be a minimum of $300,000. Expert witness fees in this matter could involve additional sums in excess of $600,000, depending upon the implementation of these tasks in the context of these proceedings. Direct costs (travel, communications, computer analysis, etc.) would be an additional expense, which generally is 12-15 percent of professional service costs.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 29, 2004.

_____
John C. Beyer

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on this date 7-1-04

_____

47343

4