Westlaw.

974 F.2d 1329 (Table)  
Unpublished Disposition

Page 1

(Cite as: 974 F.2d 1329, 1992 WL 217410 (1st Cir.(Mass.)))

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA1 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals,  
First Circuit.

Elie J. BAGHDADY, Plaintiff, Appellant,  
v.  
Larry D. SADLER, et al., Defendants, Appellees.

No. 92-1214.

September 9, 1992

Appeal from the United States District Court for the District of Massachusetts

Edward F. Haber with whom Andrew A. Rainer and Spairo, Grace & Haber were on brief for appellant.

Bryan G. Killian with whom David A. Guberman, Barbara O'Donnell and Sherin and Lodgen were on brief for appellees.

D.Mass.

AFFIRMED.

Before Cyr and Boudin, Circuit Judges, and Hornby, [FN*] District Judge.

HORNBY, District Judge.

**1 This appeal challenges a decision compelling arbitration of a dispute between a securities firm and a customer, and the eventual confirmation of the arbitrator's award. The record satisfies us that there was an enforceable agreement between the parties to arbitrate disputes. We therefore conclude that the lower court properly compelled arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Because the challenge to the award reveals only frustration with the results, there is no basis to vacate the district court's decision to confirm the award. We therefore affirm.

*Facts*

Elie J. Baghdady held a substantial number of shares in a company called Teledyne, Inc. ("Teledyne"). Unhappy with the handling of his securities account at another brokerage firm, in July, 1981, Baghdady transferred his Teledyne shares to the Boston office of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). According to Baghdady, he opened the Merrill Lynch account for the single purpose of containing risks he was facing on certain call options. He expected the arrangement to last only until he could find a broker with sufficient "expertise in options to help him out of [his] precarious investment situation." When he opened the Merrill Lynch account on July 29, 1981, Baghdady signed an agreement called a "Standard Option Agreement." The agreement provided that "[a]ny controversy between [Baghdady and Merrill Lynch] arising out of such option transactions or [the] agreement shall be settled by arbitration only before the National Association of Security Dealers...."

In November, 1981, Baghdady met Larry D. Sadler and John Voll, two stockbrokers operating out of Merrill Lynch's Burlington, Massachusetts, office with expertise in options trading. Believing that the Burlington office would better serve his needs and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

974 F.2d 1329 (Table)  
Unpublished Disposition

Page 2

(Cite as: 974 F.2d 1329, 1992 WL 217410 (1st Cir.(Mass.)))

perhaps find a way to reduce the losses that had continued to escalate under Merrill Lynch's watch, in December, 1981, Baghdady directed Merrill Lynch to open an account in his name at the Burlington location. Merrill Lynch did so by transferring the trade balances in the Boston account to a newly assigned account at Burlington. Once at the Burlington office, a slightly different investment strategy was pursued although it still involved options trading against the Teledyne stock. Baghdady's misfortunes continued at the Burlington office and by the time he closed that account in 1982 his losses had mounted to $1,432,248.91.

On August 2, 1985, Baghdady brought this action against Merrill Lynch and Sadler, seeking damages for their alleged mishandling of his securities account. Merrill Lynch and Sadler moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16. That motion was granted over Baghdady's objections and the case proceeded to arbitration before the National Association of Securities Dealers, Inc. (the "NASD"). On February 26, 1991, following an evidentiary hearing, a three-member NASD panel awarded Baghdady the amount of $60,720.15. Baghdady petitioned the district court to vacate or correct the NASD award, but on January 14, 1992, the court confirmed the award. Baghdady has appealed, challenging both the initial order to arbitrate and the final confirmation of the award.

*The Decision to Compel Arbitration*

**2 The document that Baghdady signed on July 29, 1981, explicitly governed "any transaction" executed by Merrill Lynch for put and call options. It stated that "any controversy between us arising out of such option transactions ... shall be settled by arbitration...." The document did not limit its terms to a particular account. Instead, its scope extended to all accounts the customer might have with Merrill Lynch. [FN1] The controversy here involves put and call options exercised by Merrill Lynch on behalf of Baghdady. It is thus clearly within the terms of the agreement to arbitrate. Baghdady asserts that he did not read the printed text of the document when he signed it, did not intend to enter into an arbitration agreement and did not intend that the agreement would apply to any other account. He likewise asserts that when he opened the Burlington account in December, 1981, he did not intend the July agreement to apply. Although these may be disputed matters, they are not material. The document Baghdady did sign was clear on its face and its scope was unrestricted. [FN2] There is no suggestion that Baghdady was prevented from reading the document before he signed it.

Baghdady argues that under this interpretation of the document, a new account opened 30 years later in Melbourne, Australia, would still be subject to arbitration. If the customer's relationship with Merrill Lynch was ongoing during the 30 years (as it was here during six months), that might well be the case. Neither in that case nor in this case do we have a situation where the contractual relationship has come to an end such that the parties might reasonably expect their legal agreement to have lost any continuing vitality. Instead, Baghdady transferred his stock directly from the Boston account to the Burlington account.

Baghdady also points to the language in *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3rd Cir. 1980), that "[i]f there is doubt as to whether [an express unequivocal arbitration agreement] exists, the matter, upon a proper and timely demand, should be submitted to a jury." The "doubt" in *Par-Knit*, however-and thus the genuine issue of material fact-was whether a company's production manager had authority to bind the corporation for which he spoke. There is no dispute here that Baghdady had authority to bind himself. Since we find the language clear in the contract he signed, there is no issue for a trial, jury or nonjury, under the Federal Arbitration Act, 9 U.S.C. § 4.

We conclude therefore that the district court properly ordered arbitration under the Federal Arbitration Act.

*The Arbitration Award*

The Federal Arbitration Act permits a district court to vacate an arbitration award where it finds certain wrongdoing or abuses in the arbitration process. 9

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

974 F.2d 1329 (Table)  
Unpublished Disposition

Page 3

(Cite as: 974 F.2d 1329, 1992 WL 217410 (1st Cir.(Mass.)))

U.S.C. § 10. Baghdady has not asserted that any such statutory abuses have occurred here. Rather, he contends that the award should have been vacated because there was evidence of a "manifest disregard of the law," citing *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953) (creating a judicial standard for reviewing arbitration awards outside the Federal Arbitration Act), *overruled on other grounds by Rodriquez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989).

**3 Cut to its essence, Baghdady's claim is that the arbitrators fully understood established legal principles for calculating damages, but disregarded those principles. Baghdady insists that such disregard of the law is proven by the amount of damages actually awarded. He maintains that the $60,720.15 awarded was the "sum of [his] losses on precisely two transactions in the account." If that was the basis for the award, he argues, then there must have been a manifest disregard of the law because the arbitration panel could not justifiably have distinguished those two transactions from the losses demonstrated on "the 25 other transactions in his account." Baghdady's displeasure with his recovery, however, provides no basis for vacating the award. For us to find a manifest disregard of the law, "there must be some showing in the record, *other than the result obtained*, that the arbitrators knew the law and expressly disregarded it." *Advest, Inc. v. McCarthy*, 914 F.2d 6, 10 (1st Cir. 1990) (emphasis supplied) (citations omitted). [FN3] Here, Baghdady has nothing but the arbitration result to buttress his claim of manifest disregard. That is simply insufficient.

*Advest* left open one other additional possibility: "In certain circumstances, the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug." *Id.* at 10. But like *Advest*, this is not such a case. As *Advest* recognized, "arbitrators possess latitude in crafting remedies as wide as that which they possess in deciding cases.... That leeway is at its zenith when, as here, the arbitration clause imposes no limitations on choice of remedies." *Id.* at 10-11

(citations omitted). Even if the award here was based on two specific transactions as Baghdady suggests, the panel may have found that the defendants had breached a promise to rescind those transactions. Baghdady argues that this finding would have been erroneous. That, however, is a matter beyond the scope of our review. As we have said before, we "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Advest*, 914 F.2d at 8 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). " [As] long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator made a serious mistake or committed grievous error will not furnish a satisfactory basis for undoing the decision." *Advest*, 914 F.2d at 9 (quoting *Misco*, 484 U.S. at 38). Whatever its reasoning, the panel's award here was at least within the realm of possible remedies that could have been fashioned in this case. The district court properly confirmed the award.

Judgment *AFFIRMED*.

FN* Of the District of Maine, sitting by designation.

FN1. Paragraph 3, for example, provided: "Any securities and funds held by you in any account of mine with you shall be held by you as security for the performance by me of my obligations to you under this Agreement." Paragraph 8 also made clear that Merrill Lynch contract documents applied to more than one account: "Any agreement by me with you, whether previously or hereafter made applicable to any account of mine with you, shall also apply to such option transactions except to the extent which it conflicts with this agreement. In the event of a conflict, this agreement shall control, and where there is no conflict, each provision of each agreement shall apply."

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

974 F.2d 1329 (Table) Page 4
Unpublished Disposition

(Cite as: 974 F.2d 1329, 1992 WL 217410 (1st Cir.(Mass.)))

FN2. Baghdady is bound by his "external expression of intention as distinguished from [any] undisclosed intention." *Restatement (Second) of Contracts* § 2 cmt. b (1981).

FN3. Baghdady also seeks to have us modify *Advest* to include "consideration of how the law was applied to the facts or otherwise to avoid a miscarriage of justice." We see no reason to do so. Such a modification would cut against decades of judicial treatment of arbitrators' decisions.

974 F.2d 1329 (Table), 1992 WL 217410 (1st Cir.(Mass.)) Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works