**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        :
JACK ROGERS and                         :
PAUL PINELLA,                           :    Case No.  04-cv-10142-EFH
                                        :    Honorable Edward F. Harrington
                    Plaintiffs,         :
        v.                              :
                                        :
COMCAST CORPORATION and AT&T            :
BROADBAND,                              :
                                        :
                    Defendants.         :
_____:


**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**THEIR MOTION TO COMPEL ARBITRATION**


Attorneys for Defendants:

Christopher F. Robertson (BBO # 642094)        Christopher M. Curran (*pro hac vice*)
Seyfarth Shaw LLP                              Jaime A. Bianchi (*pro hac vice*)
World Trade Center East, Suite 300             George L. Paul (*pro hac vice*)
Two Seaport Lane                               White & Case LLP
Boston, MA  02210-2028                         601 Thirteenth Street, N.W.
Telephone:  (617) 946-4800                     Washington, D.C.  20005
Facsimile:  (617) 946-4801                     Telephone:  (202) 626-3600
                                               Facsimile:  (202) 639-9355

July 22, 2004

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

REPLY ARGUMENT ..........................................................................................................1

I.  PLAINTIFFS' SUBSCRIBER AGREEMENTS CONTAIN VALID
    ARBITRATION AGREEMENTS THAT APPLY TO THEIR CLAIMS. ...................1

    A.  The Policies & Practices Contain A Valid and Enforceable Arbitration
        Provision. ...................................................................................................2

    B.  Plaintiffs' Sherman Act Claims Are Covered By the Arbitration
        Provision in the Policies & Practices. .............................................................5

        1.  The arbitration provision covers antitrust claims.................................5

        2.  The arbitration provision covers claims that arose prior to the
            amendment of the Policies & Practices to include an arbitration
            clause.................................................................................................6

II. PLAINTIFFS CAN VINDICATE THEIR SHERMAN ACT CLAIMS IN
    ARBITRATION. ......................................................................................................7

    A.  The Policies & Practices Allow Recovery of Statutory Costs, Including
        Attorneys' Fees, and Provide That Comcast Will Pay Arbitration
        Costs.........................................................................................................7

    B.  The Limitation On Recovery Of Treble Damages Does Not Preclude
        Arbitration...................................................................................................9

    C.  The Class Recovery Bar Is Enforceable, Especially Where Individual
        Plaintiffs Can Recover Statutory Attorneys' Fees And Costs. ........................11

    D.  The "Limited" Discovery Available in An Arbitral Forum Does Not
        Preclude Arbitration....................................................................................12

    E.  Plaintiffs' Obligation to Contact Comcast Within One Year of An
        Event Giving Rise to A Dispute Subject to Arbitration Does Not
        Preclude Vindication of Their Statutory Rights in Arbitration........................13

III. THE ARBITRATION PROVISION IS NOT UNCONSCIONABLE.......................15

    A.  State Law of Procedural and Substantive Unconscionability Are
        Preempted by Federal Law and FCC Regulations...........................................16

    B.  The Arbitration Provision Is Not Unconscionable...........................................17

IV.    ANY PROVISION OF THE POLICIES & PRACTICES THAT IS NOT
       ENFORCEABLE CAN BE SEVERED. ....................................................................19

CONCLUSION..............................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

Alcorn v. Raytheon Co.,
   175 F. Supp. 2d 117 (D. Mass. 2001) ............................................................................15

Baghdady v. Sadler,
   No. 92-1214, 1992 WL 217410 (1st Cir. Sep. 9, 1992).....................................................2

Barnstead v. Ridder,
   39 Mass. App. Ct. 934, 659 N.E.2d 753 (1996) ...............................................................6

Bischoff v. DirecTV, Inc.,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................................6

Boomer v. AT&T Corp.,
   309 F.3d 404 (7th Cir. 2002) ......................................................................................5, 17

Brunswick v. Pueblo Bowl-O-Mat,
   429 U.S. 477 (1977).........................................................................................................10

Cadillac Automobile Co. of Boston v. Engeian,
   339 Mass. 26, 157 N.E.2d 657 (1959) ............................................................................19

Carter v. Countrywide Credit Industrial Inc.,
   362 F.3d 294 (5th Cir. 2004) ............................................................................................8

Choice Sec. Sys., Inc. v. AT&T Corp.,
   No. 97-1774, 1998 WL 153254 (1st Cir. Feb. 25, 1998)...................................................6

City Builders Supply Co. v. National Gypsum Co.,
   Civ. A. No. 81-0203-F, 1984 WL 3209 (D. Mass. Sep. 24, 1984)...................................11

Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co.,
   210 F. Supp. 557 (N.D. Ill. 1962) ...................................................................................15

DeOrnellas v. Aspen Square Mgmt., Inc.,
   295 F. Supp. 753 (E.D. Mich. 2003)..................................................................................2

Deposit Guaranty National Bank v. Roper,
   445 U.S. 326 (1980).........................................................................................................12

Discount Trophy & Co., Inc. v. Plastic Dress-up Co.,
   Civ. A. 3:03CV2167, 2004 WL 350477 (D. Conn. Feb. 19, 2004)..................................10

Entous v. Viacom International, Inc.,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001) ...........................................................................14

Fidelity Federal Savings & Loan Association v. Cuesta,
    458 U.S. 141 (1982)...........................................................................................................3

Filanto, S.p.A. v. Chilewich International Corp.,
    789 F. Supp. 1229 (S.D.N.Y. 1992).................................................................................5

Fisher v. GE Medical System,
    276 F. Supp. 2d 891 (M.D. Tenn. 2003)...........................................................................2

Fluehmann v. Assocs. Fin. Servs.,
    No. CIV.A. 01-40076-NMG, 2002 WL 500564, at*5.......................................2, 6, 11, 18

Free v. Bland,
369 U.S. 663 (1962).............................................................................................................3

Gilmer v. Interstate/Johnson Lake Corp.,
    500 U.S. 20 (1991)..............................................................................................7, 11, 13

Green Tree Finance Corp. v. Bazzle,
    539 U.S. 444, 123 S. Ct. 2402 (2003)..............................................................................1

Hill v. Gateway 2000, Inc.,
    105 F.3d 1147 (7th Cir. 1997) ..........................................................................................2

Hinkle by Hinkle v. Henderson,
    85 F.3d 298 (7th Cir. 1996) ............................................................................................15

Howsam v. Dean  Witter Reynolds, Inc.,
    537 U.S. 79 (2002).....................................................................................................1, 14

Hurlbut v. Gantshar,
    674 F. Supp. 385 (D. Mass. 1987) .................................................................................17

In re Universal Service Fund Telephone Billing Practices Litigation,
    300 F. Supp. 2d 1107 (D. Kan. 2003).....................................................................5, 6, 17

Johnson v. West Suburban Bank,
    225 F.3d 366 (3d Cir. 2000)...........................................................................................12

KBQ, Inc. v. E.I. du Pont de Nemours & Co.,
    6 F. Supp. 2d 94 (D. Mass. 1998) .............................................................................15, 16

Kansas City, Mo. Co. v. Federal Pacific Electric Co.,
    310 F.2d 271 (8th Cir. 1962) ..............................................................15

MFS International, Inc. v. International Telecommunications, Ltd.,
    50 F. Supp. 2d 517 (E.D. Va. 1999) ...................................................15

Mattox v. Decision One Mortgage Co., LLC,
    No. 01-10657-GAO, 2002 WL 31121087 (D. Mass. Sept. 26, 2002) ..............................18

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985)....................................................................6, 7, 10, 13

Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,
    460 U.S. 1 (1983).............................................................................6

Order of United Commercial Travelers v. Wolfe,
    331 U.S. 586, 589 (1947).....................................................................15

Pacificare Health Sys., Inc. v. Book,
    538 U.S. 401 (2003)...................................................................9, 10, 18

Pay Phone Concepts, Inc. v. MCI Telecomm. Corp.,
    904 F. Supp. 1202 (D. Kan. 1995) .......................................................5

Piantes v. Pepperidge Farm, Inc.,
    875 F. Supp. 929 (D. Mass. 1995) ......................................................18

Reynolds Industrial, Inc. v. Mobil Oil Corp.,
    618 F. Supp. 419 (D. Mass. 1985) ......................................................19

Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    170 F.3d 1 (1st Cir. 1999)...............................................................16

Roskam Baking Co., Inc., v. Lanham Machine Co., Inc.,
    288 F.3d 895 (6th Cir. 2002) ...........................................................15

Sarver v. Trans Union, LLC,
    264 F. Supp. 2d 691 (N.D. Ill. 2003) ...................................................18

Schreiber v. Burlington Northern, Inc.,
    472 U.S. 1 (1985)............................................................................9

Securities Industry Association v. Connolly,
    703 F. Supp. 146 (D. Mass. 1988) ......................................................15

Shutte v. Thompson,
         82 U.S. (15 Wall.) 151 (1873) .....................................................................10

Sims v. Unicor Mortgage, Inc.,
         No. Civ.A. 4:98CV25-D-B, 1998 WL 34016832 (N.D. Miss. 1998)...............20

Snowden v. Checkpoint Check Cashing,
         290 F.3d 631 (4th Cir. 2002) .....................................................................12

Summit Packaging System v. Kenyon & Kenyon,
         273 F.3d 9 (1st Cir. 2001).............................................................................7

Ting v. AT&T,
         182 F. Supp. 2d 902 (N.D. Cal. 2002) ........................................................17

U.S. v. Mezzanatto,
         513 U.S. 196 (1995)....................................................................................10

Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,
         515 U.S. 528 (1995).......................................................................................9

## STATUTES

15 U.S.C. § 15(a) ...............................................................................................8

47 C.F.R. § 76.1514 .........................................................................................17

47 C.F.R. § 76.1603 ...........................................................................................3

47 U.S.C. § 552 .........................................................................................4, 5, 16, 17

Cable Television Consumer Protection and Competition Act of 1992, Pub. L. 102-385 ..............3

Telecommunications Act of 1996 Pub. L. 104-104 110 Stat. 56 (1996)…………………………3

## OTHER AUTHORITIES

Cable Television Consumer Protection and Competition Act of 1992 - Consumer
         Protection and Customer Service, FCC Report and Order, 58 F.R. 21107, 21108
         (1993).............................................................................................................3, 16

H.R. Rep. 104-204, 1996 U.S.C.C.A.N. 10, 79 ..............................................................4

In the Matter of Implementation of Cable Act Reform Provisions of the
         Telecommunications Act of 1996, FCC Report and Order, 61 F.R. 18968, 18973
         (1996)..........................................................................................................4

## <u>INTRODUCTION</u>

In their Opposition to Defendants' Motion to Compel Arbitration ("Pl. Mem."), Plaintiffs ignore applicable statutory, regulatory, and case law that moots their contentions. Instead, Plaintiffs focus on issues that are irrelevant either because they are preempted by federal law or are not the "gateway matters" that should be decided by a court in the first instance. They are issues for an arbitrator to decide.

Defendants' Motion to Compel Arbitration should be granted for four reasons. <u>First</u>, Plaintiffs have failed to rebut Defendants' showing that the "gateway matters" have been satisfied. The arbitration provision contained in Plaintiffs' Policies & Practices is a valid and enforceable agreement applicable to antitrust disputes. <u>Second</u>, Plaintiffs can vindicate their rights in arbitration, and despite their assertions to the contrary, if they prevail in arbitration, they will be entitled to attorneys' fees and may be entitled to treble damages. Further, the other issues raised by Plaintiffs in their opposition brief (*e.g.*, class-action bar; one-year notice period) will not prevent Plaintiffs from vindicating their rights under the Sherman Act. <u>Third</u>, the arbitration provision is not unconscionable. <u>Fourth</u>, even if clauses in the arbitration agreement were unenforceable, the Court could sever those provisions and still compel arbitration. Accordingly, Plaintiffs should be required to arbitrate their Sherman Act claims in accordance with the terms of their respective cable television subscriber agreements.

## <u>REPLY ARGUMENT</u>

### I.    PLAINTIFFS' SUBSCRIBER AGREEMENTS CONTAIN VALID ARBITRATION AGREEMENTS THAT APPLY TO THEIR CLAIMS.

When ruling on a motion to compel arbitration, the Court is limited to considering only certain "gateway matters": 1) whether the parties have a valid arbitration agreement and 2) whether a concededly binding arbitration clause applies to a certain type of controversy. <u>See</u>

Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 123 S. Ct. 2402, 2407 (2003); Howsam v. Dean

Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).  Defendants satisfied both "gateway matters" in

their Motion to Compel Arbitration.  Arbitration must therefore be compelled.

A.    **The Policies & Practices Contain A Valid and Enforceable
Arbitration Provision.**

Plaintiffs have the burden of showing that they did not agree to arbitrate their claims

under their respective Subscriber Agreements – a burden they have failed to satisfy in their

Opposition papers.  Pl. Mem. at 14-19.  See Fluehmann v. Assocs. Fin. Servs., No. CIV.A. 01-

40076-NMG, 2002 WL 500564, at*5 ("[T]he party seeking a judicial rather than an arbitral

forum . . . must offer some evidence to substantiate [a claim that an arbitration agreement was

never consummated].").  Plaintiffs merely assert, in conclusory fashion through affidavits, that

they do not remember reading or receiving an arbitration provision.  However, it is irrelevant

whether or not Plaintiffs bothered to read the arbitration agreement.  See id. at *5-6 ("a party

may be bound by . . . an arbitration agreement even absent a signature."); see also Baghdady v.

Sadler, No. 92-1214, 1992 WL 217410, at *2 (1st Cir. Sep. 9, 1992) (unpublished) (attached

hereto as Exh. 1).[1]

Plaintiffs Rogers and Pinella entered into agreements to arbitrate their claims.  See

Affidavit of William Devine ("Devine Aff. ¶__", submitted with Defendants' Motion).  Their

arbitration agreements, contained in the Policies & Practices, have been mailed to Boston cluster

subscribers annually with each subscriber's November/December bill since 2001.  Devine Aff.

---

[1]    See also Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148-49 (7th Cir. 1997) ("A contract need not
be read to be effective; people . . . take the risk that the unread terms may in retrospect prove
unwelcome."); DeOrnellas v. Aspen Square Mgmt., Inc., 295 F. Supp. 753, 763-65 (E.D. Mich. 2003)
(arbitration agreement enforceable despite the plaintiff's affidavit which stated that "I do not specifically
recall signing an Employment Arbitration Agreement'"); Fisher v. GE Med. Sys., 276 F. Supp. 2d 891,
895 (M.D. Tenn. 2003) ("That [the plaintiff] 'does not recall' receiving a copy of [the arbitration
agreement] does not invalidate the agreement.").

-2-

¶4.  Plaintiffs allege neither that they objected to the arbitration provisions contained in their Subscriber Agreements, nor that they sought to have their service disconnected because of such a provision.  Instead, they continued to subscribe, thereby accepting arbitration.

In their Motion to Compel Arbitration, Defendants established that federal law – the Cable Act[2] and FCC regulations[3] – governs Plaintiffs' relationships with their cable operators.  Def. Mem. at 7-9.  In their brief, however, Plaintiffs never address the preemptive effect of the federal law.  Instead, they argue that a contract cannot be modified unilaterally without the assent of both parties to a contract, citing only to state cases.  Pl. Mem. at 14-19.  These cases are inapposite because federal law governs a contract for the provision of cable television service.  Also, Plaintiffs <u>did</u> assent by continuing to subscribe, thereby manifesting their consent to the arbitration provisions.[4]

"The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail."  <u>Fidelity Fed. Sav. & Loan Ass'n v. Cuesta</u>, 458 U.S. 141, 153 (1982) (quoting <u>Free v. Bland</u>, 369 U.S. 663 (1962)).[5]  Federal law expressly defines the procedures for

---

[2]     <u>See</u> Communications Act of 1934, § 632 codified at 47 U.S.C. § 552 (the "Communications Act"), as amended by the Cable Television Consumer Protection and Competition Act of 1992, Pub. L. 102-385 (the "Cable Act"); Telecommunications Act of 1996 Pub. L. 104-104 110 Stat. 56 (1996).

[3]     <u>See</u> 47 C.F.R. Part 76, Subpart T; <u>Implementation of Section 8 of the Cable Television Consumer Protection and Competition Act of 1992 – Consumer Protection and Customer Service</u>, *FCC Report and Order*, 58 FR 21107, 21108 (1993); <u>see also</u> 47 C.F.R. § 76.1603.

[4]     Plaintiffs also argue that the Court should infer that "pre-existing subscription agreements" did not permit amendments or additions to the subscriber agreements and then allege that Defendants did not produce such agreements.  Pl. Mem. at 15.  This argument is disingenuous because a Policies & Practices dating back to 2000 and predating the implementation of the arbitration provision was produced to Plaintiffs on April 23, 2004 with Bates number BEH1-0361 – 62, and provided in paragraph 11 that the cable operator would "notify [the subscriber] of changes to these policies and practices."  (A copy of the 2000 Policies and Practices is attached hereto as Exh. 2).

[5]     Moreover, "[f]ederal regulations have no less preemptive effect than federal statutes."  <u>Id.</u> at 153-54.

providing subscribers with written notices of changes in cable service. These procedures are

found in both the Cable Television Consumer Protection and Competition Act of 1992 and the

Telecommunications Act of 1996 and explicitly allow a cable operator to "provide notice of

service and rate changes to subscribers using <u>any reasonable written means at its sole discretion.</u>"

47 U.S.C. § 552(c) (emphasis added). In enacting this provision, the House explained:

> There is no need for intrusive regulations to dictate how cable operators
> communicate this 30-day advance notice to subscribers, as long as the
> method of notification used by the operator is reasonable and conspicuous.

H.R. Rep. 104-204, 1996 U.S.C.C.A.N. 10, 79. The FCC explained that §552(c), as revised

under the 1996 Telecommunications Act, authorized not only the use of bill stuffers as valid

notice of a change in subscriber agreements under federal law, but also less obtrusive methods.

<u>In the Matter of Implementation of Cable Act Reform Provisions of the Telecommunications Act</u>

<u>of 1996</u>, *FCC Report and Order*, 61 FR 18968, 18973 (1996). ("Given the [1996

Telecommunications Act], a change in our current rules is justified so that notice provided

through written announcements on the cable system or newspaper will be presumed sufficient.").

Moreover, contrary to the Plaintiffs' argument that a "take it or leave it" contract is invalid,

Congress noted that the very ability of cable subscribers to "disconnect their service prior to

implementation of the change" validates the means by which the notice of the change was

conveyed. H.R. Rep. 104-204, 1996 U.S.C.C.A.N. 10, 79. ("The purpose of the notice

requirement is to ensure that consumers have sufficient warning about rate and service changes

so that they can choose to disconnect their service prior to implementation of the change.").

Under this federal regulatory regime, Defendants can exercise discretion as to how to

disseminate subscriber notices, and any conflicting state law rules or obligations that would fetter

that discretion are preempted. Even Plaintiffs' own authority supports this position. For

example, in <u>In re Universal Serv. Fund Tel. Billing Practices Litig.</u>, 300 F. Supp. 2d 1107, 1120-

21 (D. Kan. 2003), the court there held that a consumer services agreement for long distance telephone service was governed by the Communications Act, and that challenges based on substantive unconscionability were preempted because the Communications Act governed the propriety of the actual terms and conditions of long distance service contracts. See also Boomer v. AT&T Corp., 309 F.3d 404, 423 (7th Cir. 2002) (finding state law challenges to the arbitration clauses preempted by the Communications Act).[6]

The dissemination of the arbitration provision contained in the Policies & Practices in the Boston cluster was reasonable, in writing, and authorized by federal law, specifically, 47 U.S.C. § 552(c). Accordingly, the arbitration provisions, which are governed by and satisfy federal law,[7] are valid and enforceable and Plaintiffs should be compelled to arbitrate their claims.

**B.     Plaintiffs' Sherman Act Claims Are Covered By the Arbitration Provision in the Policies & Practices.**

**1.     The arbitration provision covers antitrust claims.**

In their Motion to Compel Arbitration, Defendants established that Plaintiffs' claims fall within the scope of the broadly worded arbitration provision in the Subscriber Agreement, (Def. Mem. at 9-12), which covers claims arising out of the Subscriber Agreement or relating to the cable service provided.[8] Policies & Practices ¶10. In a substantially similar case, Bischoff v.

---

[6]     Ironically, in trying to distinguish Boomer's holding that the arbitration provisions are valid as a matter of law, Plaintiffs argue that the Boomer court did not "decide the unconscionability claim raised in the case." Pl. Mem. at 17, n.10. It is precisely because the Boomer Court found that "the Communications Act preempts other state law challenges to the validity of the terms and conditions contained in the CSA" that it did not reach unconscionability. Boomer, 309 F.3d at 419, n.10.

[7]     See, e.g., Pay Phone Concepts, Inc. v. MCI Telecomm. Corp., 904 F. Supp. 1202, 1207 (D. Kan. 1995) (arbitration compelled where the Communications Act provided for the means by which a service provider amended its agreements and state law contract principles did not apply); Filanto, S.p.A. v. Chilewich Int'l Corp., 789 F. Supp. 1229, 1236-37 (S.D.N.Y. 1992) (federal law of contracts, not New York law, governed whether parties agreed to arbitrate dispute arising under federal treaty).

[8]     When presented with an "ostensibly broad" arbitration provision that covers any dispute "arising under" or "relating to" the agreement containing the provision, "courts presume the validity of an

DirecTV, Inc., 180 F. Supp. 2d 1097, 1106 (C.D. Cal. 2002), a federal district court compelled

arbitration of a satellite television customer's antitrust claims. See also Mitsubishi Motors Corp.

v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.13 (1985) (holding antitrust claims were

arbitrable under the FAA where arbitration provision was broadly worded). Plaintiffs do not

contest – and therefore concede – that their antitrust claims would fall within the scope of the

broadly worded arbitration provision.

>                   **2.    The arbitration provision covers claims that arose prior**
>                   **to the amendment of the Policies & Practices to include**
>                   **an arbitration clause.**

Plaintiffs' contention that the arbitration provisions here are temporally limited and do

not govern claims arising prior to 2001 is simply incorrect. Pl. Mem. at 19-20. All of Plaintiffs'

claims are arbitrable for two reasons. First, there is a strong presumption in favor of arbitration

and "any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).[9]

Second, the language of the arbitration provision covers disputes occurring prior to the

agreement because the provision covers claims "related to or arising out of this Agreement or the

services provided." Policies & Practices ¶10 (emphasis added).[10]

---

agreement to arbitrate." Fluehmann v. Assocs. Fin. Servs., No. CIV.A. 01-40076-NMG, 2002 WL
500564, at *6 (D. Mass. Mar. 29, 2002).

[9]     See also Barnstead v. Ridder, 39 Mass. App. Ct. 934, 936-37, 659 N.E.2d 753 (1996) ("There is a
strong public policy in Massachusetts of favoring arbitration as an alternative to litigation.").

[10]    Plaintiffs' reliance on Universal and Choice Sec. Sys., Inc. v. AT&T Corp. for the proposition
that claims predating the arbitration provisions fall outside the arbitration clause (Pl. Mem. at 19-20) is
misplaced. The arbitration clauses in Universal and Choice Sec. Sys. are distinguishable from the clauses
in the Policies & Practices because they were limited to disputes "arising out of or related to this
Agreement," 300 F. Supp. 2d at 1130, or "arising out of or related to products furnished pursuant to this
agreement." 1998 WL 153254, at *1. The arbitration provision here is not so limited. It covers disputes
related to both the cable "services provided" and the Policies & Practices. And even if only those claims
that accrued after the effective date of the arbitration provision were arbitrable, an arbitration provision
has been in effect since November 2001 that would cover all claims accruing during or after that time.

Accordingly, as Defendants have proven that an arbitration agreement exists between Plaintiffs and their cable operators pursuant to federal law, and because Plaintiffs' claims are within the scope of the broadly worded arbitration clauses in the Subscriber Agreements, both "gateway matters" to deciding a motion to compel arbitration have been satisfied and the Court should compel Plaintiffs to arbitrate their claims.

## II.    PLAINTIFFS CAN VINDICATE THEIR SHERMAN ACT CLAIMS IN ARBITRATION.

Plaintiffs' Complaint seeks redress for Comcast's alleged conduct in violation of Sections 1 and 2 of the Sherman Act.  The Supreme Court has recognized repeatedly that private claims for violation of the Sherman Act can be vindicated through arbitration.  See, e.g., Gilmer v. Interstate/Johnson Lake Corp., 500 U.S. 20, 26 (1991); Mitsubishi, 473 U.S. 614, 631 (1985).

Plaintiffs argue that arbitration should not be compelled because the arbitration provision precludes effective vindication of their Sherman Act claims.  Pl. Mem. at 3-4.  Where, as here, a party has a choice between arbitration and litigation and chooses to arbitrate, "arbitration be[comes] the mandatory, and exclusive, forum for dispute resolution." Summit Packaging Sys. v. Kenyon & Kenyon, 273 F.3d 9, 13 (1st Cir. 2001).  Because Plaintiffs assented to arbitration, their claims must be heard in an arbitral forum.

### A.    The Policies & Practices Allow Recovery of Statutory Costs, Including Attorneys' Fees, and Provide That Comcast Will Pay Arbitration Costs.

Section 4 of the Clayton Act provides that private litigants "shall recover … the cost of suit, including a reasonable attorney's fee" if they successfully prosecute claims for violation of Sections 1 or 2 of the Sherman Act.  15 U.S.C. § 15(a) (2004).  Plaintiffs argue that arbitration should not be compelled because the Policies & Practices preclude recovery of statutory

BO1 15659264.1

"attorneys' fees and other costs of litigation."  Pl. Mem. at 8.  This contention is wrong; the

Policies & Practices does allow recovery of statutory attorneys' fees and costs.

It is clear that the language challenged by Plaintiffs does not bar recovery of statutory

attorneys' fees and costs.  Paragraph 10 of the Policies & Practices provides, in relevant part:

> [Comcast] will pay for all reasonable arbitration filing fees and
> arbitrator's costs and expenses, except that YOU ARE
> RESPONSIBLE FOR ALL COSTS THAT YOU INCUR IN THE
> ARBITRATION, INCLUDING, BUT NOT LIMITED TO, YOUR
> EXPERT WITNESS OR ATTORNEYS.

Policies & Practices ¶10 (emphasis in original).  This provision simply requires the subscriber to

cover his or her own expenses (*i.e.*, attorney and expert fees), in the first instance, while also

alleviating additional costs that subscribers might otherwise incur in connection with the

selection of an arbitral forum.

Contrary to Plaintiffs' argument, however, Paragraph 10 does not in any way preclude an

arbitral tribunal from awarding attorneys' fees and costs.  This conclusion is not only compelled

by its language, but is further supported by the fact that the parties' agreement regarding

limitation on liability does not include any limitation on recovery of statutory attorneys' fees and

costs.  See Policies & Practices, ¶8.[11]

Finally, even if there were ambiguity as to whether the Policies & Practices precluded

Plaintiffs' recovery of statutory attorneys' fees and costs (which there is not), that ambiguity is

properly resolved by an arbitrator.  See Pacificare Health Sys., Inc. v. Book, 538 U.S. 401, 407

(2003) (impact of remedial limitations contained in a contract providing for arbitration is to be

---

[11]     Even if the parties had agreed to waive entitlement to statutory attorneys' fees and costs, such
waivers are lawful and do not preclude enforcement of the parties' agreement to pursue claims in
arbitration.  See Carter v. Countrywide Credit Indus. Inc., 362 F.3d 294, 299 (5th Cir. 2004) ("We also
conclude that the Arbitration Agreement's failure to explicitly mandate that the arbitrator grant attorneys'
fees to prevailing parties is not a basis for invalidating the Agreements.").  That said, Defendants do not
now and have never argued that the Policies & Practices contain such a waiver.

BO1 15659264.1

determined by an arbitrator); <u>Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer</u>, 515 U.S. 528, 541 (1995) (resolution of ambiguities in agreement containing arbitration clause is task for arbitrator).

### B.    The Limitation On Recovery Of Treble Damages Does Not Preclude Arbitration.

Plaintiffs next argue that the limitation on recovery of treble damages in the Policies & Practices precludes Plaintiffs' vindication of their Sherman Act claims in an arbitral forum.  This argument is a red herring.  The section concerning limitation on liability (¶8) is separate and distinct from the arbitration clause (¶10).  As such, the limitation on liability applies to Plaintiffs' claims regardless of the forum and has no bearing on whether arbitration should be compelled.

Furthermore, it is unclear whether Plaintiffs are correct in their assertion that this provision limits their ability to recover treble damages under the Clayton Act.[12]  The limitation on liability contained in Paragraph 8 may extend only to non-compensatory treble damages, as Paragraph 8 precludes recovery of "treble" damages in the context of precluding categories of non-compensatory damages (*i.e.*, punitive, exemplary, special, indirect, incidental and consequential damages).  The limitation on recovery of treble damages may be read in this context to exclude only non-compensatory treble damages, and not treble damages that are compensatory in nature.  <u>See</u> <u>Schreiber v. Burlington N., Inc.</u>, 472 U.S. 1, 8  (1985) (upholding interpretation of term in conjunction with other terms listed in a series based on concept that "words grouped in a list should be given related meaning").

---

[12] Paragraph 8 of the Policies & Practices provides, in relevant part:

> YOUR SOLE AND EXCLUSIVE REMEDIES UNDER THIS AGREEMENT ARE AS EXPRESSLY SET FORTH IN THIS AGREEMENT, UNLESS APPLICABLE LAW PROVIDES THAT CERTAIN REMEDIES, DAMAGES AND/OR WARRANTIES CANNOT BE WAIVED, LIMITED OR OTHERWISE MODIFIED.  IF CERTAIN REMEDIES, DAMAGES AND/OR WARRANTIES CANNOT BE WAIVED, LIMITED OR OTHERWISE MODIFIED, THE LIABILITY OF THE COMPANY AND ITS AFFILIATES IS LIMITED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

BO1 15659264.1

The treble damages that Plaintiffs seek in this action under the Clayton Act are at least arguably compensatory in nature such that Paragraph 8 would not preclude Plaintiffs from recovering such damages.  See, e.g., Mitsubishi, 473 U.S. at 635-36 ("[T]he treble-damages cause of action conferred on private parties by § 4 of the Clayton Act, 15 U.S.C. § 15 … seeks primarily to enable an injured competitor to gain compensation for that injury."); Brunswick v. Pueblo Bowl-O-Mat, 429 U.S. 477, 485-86 (1977) ("the treble-damages provision, which makes awards available only to injured parties, and measures the awards my a multiple of the injury actually proved, is designed primarily as a remedy").  Pacificare squarely mandates that this issue is for the arbitrator to resolve.  Pacificare, 538 U.S. at 406-07 and n.1 (whether arbitral provisions precluding awards of "punitive" or "extracontractual" damages precluded recovery of treble damages under RICO was an issue for the arbitrator); Discount Trophy & Co., Inc. v. Plastic Dress-up Co., Civ. A. 3:03CV2167, 2004 WL 350477, at *6 (D. Conn. Feb. 19, 2004) (whether treble damages are prohibited is issue for arbitrator and not the court).

Furthermore, the Policies & Practices expressly contemplate that the waiver of liability for certain categories of damages identified in Paragraph 8 (including treble damages) will not serve as a limitation of liability for any damages that cannot be waived under applicable law.  Therefore, if Plaintiffs are correct that antitrust treble damages cannot be waived, they will be able to recover them.[13]

---

[13]      Despite their assertion that treble damages are essential to the vindication of their antitrust rights, Plaintiffs have not cited to a single case where a waiver of treble damages was deemed unenforceable.  Indeed, it is axiomatic that parties may generally agree to waive their statutory rights and remedies.  See, e.g., U.S. v. Mezzanatto, 513 U.S. 196, 201 (1995) ("[W]e have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties."); Shutte v. Thompson, 82 U.S. (15 Wall.) 151, 159 (1873) ("A party may waive any provision . . . of a statute intended for his benefit.").  Accordingly, having made a "bargain to arbitrate . . . part[ies] should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."  Mitsubishi, 473 U.S. at 628.  Even with a waiver of treble antitrust damages Plaintiffs would be entitled to recover single damages together with attorneys' fees and costs.

-10-

**C.    The Class Recovery Bar Is Enforceable, Especially Where Individual Plaintiffs Can Recover Statutory Attorneys' Fees And Costs.**

Plaintiffs next complain that their agreement to pursue individual, rather than class-wide, recovery precludes their ability to vindicate their rights in arbitration.[14]  Pl. Mem. at 5-7. Plaintiffs argue that, absent availability of the class-action mechanism, neither they nor their counsel would pursue their claims given that "the potential recovery for an individual subscriber is minuscule in comparison to the huge costs necessary to litigate the case."  Pl. Mem. at 5.[15] This argument is insufficient to overcome the strong federal policy in favor of arbitration.

Neither the Sherman Act nor the Clayton Act provides a statutory right to class-wide redress for violation of the antitrust laws.  Indeed, Plaintiffs have no "right" to class relief and any waiver of the class action procedure is fully enforceable.  See Gilmer, 500 U.S. at 33 ("'even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.'"); Fluehmann, 2002 WL 500564, at *3 ("Although class actions are clearly within the contemplation of [TILA], the law does not expressly confer upon borrowers a right to commence them or suggest a congressional intent to exempt putative class action claims from binding arbitration clauses.").

---

[14]    Paragraph 10 of the Policies & Practices provides, in relevant part:

> THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO
> BE ARBITRATED ON A CLASS ACTION OR CONSOLIDATED BASIS …
> UNLESS YOUR STATE'S LAWS PROVIDE OTHERWISE.

[15]    In support, Plaintiffs attach affidavits providing nothing more than legal conclusions concerning Plaintiffs' vindication of their Sherman Act claims.  The Court should disregard and/or strike these affidavits.  See City Builders Supply Co. v. Nat'l Gypsum Co., Civ. A. No. 81-0203-F, 1984 WL 3209, at *4 (D. Mass. Sep. 24, 1984) (adopting Magistrate's recommendation to strike affidavits "replete with statements . . . not based on the personal knowledge of the affiants . . . [and] stat[ing] legal conclusions").

-11-

This is especially true where, as here, Plaintiffs assert claims under a statute that provides for recovery of costs, including attorneys' fees. See Johnson v. West Suburban Bank, 225 F.3d 366, 374 (3d Cir. 2000) (non-class arbitration will not "choke off the supply of lawyers willing to pursue [small] claims" where statutory attorneys fees are recoverable); Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 638-39 (4th Cir. 2002) (same). Plaintiffs' argument that they will be unable to pursue their claims absent a class mechanism because the individual claims are too small to cover the costs of pursuing those claims on an individual basis rests entirely on their incorrect assertion that they cannot recover statutory costs and attorneys' fees in the arbitral forum. Pl. Mem. at 8-9.[16]

As discussed above, Plaintiffs are entitled to recover statutory damages, attorneys' fees and costs in the event they prevail on their Sherman Act claims. Whether their action is pursued on a class or individual basis does not affect the probability of their success on the merits or the probability that they will ultimately recover such amounts. Therefore, Plaintiffs' ability to retain counsel to pursue their claims in arbitration rests not on Plaintiffs' ability to pursue claims on behalf of a class, but on the merit of their claims. As such, there is no question that the bar to class recovery contained in the Policies & Practices does not prevent vindication of Plaintiffs' statutory rights under the Sherman Act and should be enforced.

**D.     The "Limited" Discovery Available in An Arbitral Forum Does Not Preclude Arbitration.**

As discussed above, Plaintiffs do not dispute that Sherman Act claims are arbitrable. See Mitsubishi, 473 U.S. at 635-37; Gilmer, 500 U.S. at 21. Nor do they dispute the fact that discovery in arbitral proceedings is, as a general matter, less extensive than discovery in federal

---

[16]     Indeed, the cases upon which Plaintiffs rely for the proposition that "the class action mechanism is essential to the pursuit of small claims by individuals," (Pl. Mem. at 6), arise in a context where statutory costs and attorneys' fees are unavailable. See, e.g., Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 (1980).

or state courts.  Notwithstanding their agreement in this regard, Plaintiffs argue that they cannot effectively vindicate their antitrust claims in an arbitral forum because of the limited nature of discovery.  Pl. Mem. at 10-11.  Plaintiffs, however, fail to explain why the limitations on discovery in an arbitral proceeding will pose any additional hardship on the prosecution of their antitrust claims as compared to that of antitrust claims for which the courts have determined that arbitration was appropriate.  Indeed, discovery is expressly contemplated and permitted under the rules of the AAA, JAMS and NAF.  Moreover, Plaintiffs' primary claim – that Comcast entered into agreements (all of which are a matter of public record) that constitute *per se* violations of Section 1 of the Sherman Act – will require little, if any, discovery, as it challenges the contracts at issue as facially anticompetitive.

As the Supreme Court has recognized, "the factor of potential complexity alone does not persuade us that an arbitral tribunal could not properly handle an antitrust matter." Mitsubishi, 473 U.S. at 633 (internal footnote omitted); see also Gilmer, 500 U.S. at 31 (recognizing that arbitration of antitrust claims is appropriate notwithstanding the fact that discovery allowed in arbitration is more limited than in the federal courts).  As such, Plaintiffs' argument that the discovery available to them in arbitration will be insufficient so as to preclude vindication of their rights under the Sherman Act is without merit.

**E.    Plaintiffs' Obligation to Contact Comcast Within One Year of An Event Giving Rise to A Dispute Subject to Arbitration Does Not Preclude Vindication of Their Statutory Rights in Arbitration.**

Plaintiffs argue that they cannot vindicate their antitrust claims in arbitration because the Policies & Practices allegedly shorten the four-year statute of limitations for Sherman Act claims to one year.  Pl. Mem. at 9-10.  Plaintiffs misconstrue their agreement, which states:

> YOU MUST CONTACT US WITHIN ONE (1) YEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE …

-13-

OR YOU WAIVE THE RIGHT TO PURSUE A CLAIM BASED UPON SUCH
EVENT, FACTS OR DISPUTE.

Policies & Practices, ¶10 (emphasis in original).  The language quoted by Plaintiffs does not

purport to limit otherwise applicable statutes of limitation by requiring subscribers to commence

arbitral proceedings within one year, but instead requires them to provide Comcast with notice of

a dispute during that one-year timeframe.  Such notice serves an important function as it

enhances Comcast's ability to investigate disputes in a timely fashion, and to preserve evidence,

including documents and testimony, as may be necessary.  The requirement in no way impairs

Plaintiffs' ability to pursue their claims in arbitration.

Even if Plaintiffs' argument were viable, which it is not, it presents yet another issue for

an arbitrator to decide.  See Howsam, 537 U.S. at 85 (the issue of "whether prerequisites such as

time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate

have been met, are for the arbitrators to decide.") (emphasis added).

And even if Plaintiffs' interpretation of this provision were correct, parties may agree to

shorten statutory limitations periods for federal causes of action, and dictate the date of accrual

of those actions, absent explicit contrary Congressional intent.  See, e.g., Entous v. Viacom Int'l,

Inc., 151 F. Supp. 2d 1150, 1155 (C.D. Cal. 2001) ("In addition to upholding agreements

shortening statutory limitations periods, courts have enforced agreements varying the rule of

accrual"); MFS Int'l, Inc. v. Int'l Telecomm., Ltd., 50 F. Supp. 2d 517, 522-23 (E.D. Va. 1999)

("parties may, by contract, shorten a state or federal limitations period provided the state or

federal statute establishing such a period does not, explicitly or by clear implication, prohibit

such shortening") (citing Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 589

-14-

(1947)); <u>Alcorn v. Raytheon Co.</u>, 175 F. Supp. 2d 117, 121-22 (D. Mass. 2001) (parties can agree to shorter limitations period on ERISA claims, provided it is reasonable).[17]

As such, Plaintiffs' obligation to contact their cable operator within one year of the occurrence of an event giving rise to a dispute does not preclude Plaintiffs' vindication of their statutory rights in an arbitral forum.

## III.     THE ARBITRATION PROVISION IS NOT UNCONSCIONABLE.

Plaintiffs also seek to evade the arbitration provision in their subscriber agreements by arguing that it is an unconscionable adhesion contract. Pl. Mem. at 11-13. However, in Massachusetts, contracts of adhesion are not unenforceable unless they are unconscionable, and "federal courts have consistently held that agreements to arbitrate are, as a matter of law, not unconscionable." <u>Secs. Indus. Ass'n v. Connolly</u>, 703 F. Supp. 146, 153 n.11 (D. Mass. 1988). Plaintiffs have the "heavy burden" of proving unconscionability, <u>KBQ, Inc. v. E.I. du Pont de Nemours & Co.</u>, 6 F. Supp. 2d 94, 101 (D. Mass. 1998), and must "show both a lack of meaningful choice about whether to accept the provision . . . and that the disputed provisions were so one[-]sided as to be oppressive." <u>Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 170 F.3d 1, 17 (1st Cir. 1999). Plaintiffs have shown neither.

---

[17]     Nothing in the text of the Sherman or Clayton Act evidences Congressional intent to preclude parties from agreeing to shorten the four-year statute of limitations. In fact, the Clayton Act's legislative history reveals that the limitations period was intended as a procedural, rather than substantive provision. <u>See</u> <u>Kansas City, Mo. Co. v. Fed. Pac. Elec. Co.</u>, 310 F.2d 271, 283 (8th Cir. 1962) (reviewing legislative history and finding Clayton Act's limitation provision to be procedural); <u>Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.</u>, 210 F. Supp. 557, 558 (N.D. Ill. 1962) (same). It is well-settled that such procedural limitations may be waived. <u>See</u>, <u>e.g.</u>, <u>Roskam Baking Co., Inc., v. Lanham Mach. Co., Inc.</u>, 288 F.3d 895, 902 (6th Cir. 2002) (as procedural mechanisms, statutes of limitations may be waived); <u>Hinkle by Hinkle v. Henderson</u>, 85 F.3d 298, 302 (7th Cir. 1996) (same).

### A.    State Law of Procedural and Substantive Unconscionability Are Preempted by Federal Law and FCC Regulations.

Plaintiffs' argument that the arbitration provisions are procedurally unconscionable is inapposite where, as here, federal law specifically permits a cable operator to amend its subscriber agreements "using any reasonable written means at its sole discretion." 47 U.S.C. § 552(c).  And, their position that Defendants possess "superior bargaining power" and offered the arbitration clauses on a "take it or leave it basis" is irrelevant.[18]  Pl. Mem. at 12.  Sections 552(b)[19] and (c)[20] of the Communications Act of 1934, as well Federal Communications Commission ("FCC") rules specifically permit cable operators to change the terms of subscriber agreements regarding service and rate changes.  As such, federal law preempts state law on procedural unconscionability.  See Boomer, 309 F.3d at 423; Universal, 300 F. Supp. 2d at 1120-21.[21]

---

[18] It is, however, worth noting that "mere disparity in bargaining power will not support a finding of unconscionability."  KBQ, 6 F. Supp. 2d at 101.

[19]    The Cable Television Consumer Protection and Competition Act of 1992 amended the Communications Act and required the FCC to set forth standards for "communications between the cable operator and the subscriber."  47 U.S.C. §552(b)(3).  In so doing, the FCC stated:

> The Commission will require cable operators to provide written information at the time of installation and, at least annually, to all subscribers on products and services, prices and options and conditions of subscription to programming and other services, installation and service maintenance policies, instructions on how to use the cable system, and billing and complaint procedures.

Implementation of Section 8 of the Cable Television Consumer Protection and Competition Act of 1992 – Consumer Protection and Customer Service, FCC Report and Order, 58 FR 21107, 21108 (1993).  The FCC envisioned that cable operators would be provided this information as a notice in customer bills.  Id.

[20]    The Telecommunications Act of 1996 further liberalized the method by which cable operators may change terms of their customer agreements to allow for even more flexible notice of changes in rates and terms.  47 U.S.C. § 552(c) ("A cable operator may provide notice of service and rate changes to subscribers using any reasonable written means at its sole discretion.").

[21]    Plaintiffs' reliance on Ting v. AT&T, 182 F. Supp. 2d 902 (N.D. Cal. 2002), is misplaced.  Pl. Mem. at 6.  First, the preemption argument is more compelling here than in Ting, which involved long distance telephone service, because the Cable Act specifically speaks to the method and substance of

The substantive language contained in the Policies & Practices is also subject to federal preemption because Congress and the FCC have expressly authorized cable operators to provide complaint resolution procedures in their subscriber agreements.  As demonstrated in Defendants' Motion to Compel Arbitration, 47 U.S.C. § 552(b) and FCC regulations govern the terms and conditions of the subscriber agreements disseminated by cable operators.  Def. Mem. at 7-9. Under FCC regulations promulgated pursuant to 47 U.S.C. § 552(b), where a cable franchise authority requires it, cable operators are required to provide annual written notice of "billing and complaint procedures" to satisfy their customer service standards.  See 47 CFR § 76.1514(b)(6). Similarly, Congress has preempted substantive unconscionability challenges to Plaintiffs' Subscriber Agreements because federal law and FCC regulations expressly require cable operators to provide dispute resolution provisions in their subscriber agreements, so that cable operators can provide a cost-effective service to subscribers.

**B.     The Arbitration Provision Is Not Unconscionable.**

The mere fact that a contract appears on a pre-printed form is insufficient to render a contract procedurally unconscionable under Massachusetts law.  See Hurlbut v. Gantshar, 674 F. Supp. 385, 392 (D. Mass. 1987) (an agreement to arbitrate, "even though imposed by the terms of a standard form contract, is not unconscionable").  As such, Plaintiffs' argument that the arbitration provision is procedurally unconscionable is unavailing.

Nor is the arbitration provision substantively unconscionable.  A contract is substantively unconscionable when its terms are "oppressive."  Piantes v. Pepperidge Farm, Inc., 875 F. Supp. 929, 936 (D. Mass. 1995).  Plaintiffs argue that three issues render the arbitration provision

---

subscriber notice.  47 U.S.C. §§ 552(b), (c).  Second, Ting found preemption inapplicable in a case, unlike the instant case, where the relevant service had been detariffed.  Third, the unconscionability analysis in Ting was based on California law.

"patently oppressive" (Pl. Mem. at 12):  1) an alleged limitation on the remedies of treble damages and attorneys' fees; 2) a one year notice period; and 3) the class action bar.  Not one of these issues, however, renders the arbitration provisions substantively unconscionable.

The limitations of remedies issue is a red herring because attorneys' fees <u>are</u> available to successful Sherman Act claims in arbitration.  <u>See</u> Section II.A, <u>supra</u>.  The Policies & Practices, while arguably limiting availability of treble damages – in a section of the Subscriber Agreement that does not even deal with arbitration (¶8 – Limited 30-Day Warranty) – also provides such damages are available if they cannot be waived in a "savings clause" found in the last sentence of ¶8 of the Subscriber Agreement.  Further, whether a statutory entitlement to certain remedies (<i>e.g.</i> treble damages) is non-waivable is a question for the arbitrator.  <u>See</u> <u>Pacificare</u>, 538 U.S. at 407.  Additionally, the Subscriber Agreement does not bar an arbitrator from awarding attorneys' fees to a successful Sherman Act claimant.  <u>See</u> <u>Sarver v. Trans Union, LLC</u>, 264 F. Supp. 2d 691, 693 (N.D. Ill. 2003) (enforcing arbitration clauses in credit card agreements where clauses did not forbid arbitrator from awarding attorneys' fees).

Nor are the class action bar and one-year notice requirement unconscionable.  This court regularly enforces arbitration provisions containing class action bars.  <u>See</u>, <u>e.g.</u>, <u>Fluehmann</u>, 2002 WL 500564, at *3 (compelling arbitration of TILA claims in putative class action where arbitration provision provided: "there shall be no class action arbitration pursuant to this agreement"); <u>Mattox v. Decision One Mortgage Co., LLC</u>, No. 01-10657-GAO, 2002 WL 31121087, at *2 (D. Mass. Sept. 26, 2002) ("the unavailability in arbitration of procedural devices such as class action suits does not relieve a party of an obligation to arbitrate").  Moreover, a one-year window to provide notice of a claim is hardly "oppressive," especially since Comcast mails out the Policies & Practices in one-year increments.  <u>See</u> <u>Reynolds Indus.,</u>

-18-

Inc. v. Mobil Oil Corp., 618 F. Supp. 419, 423 (D. Mass. 1985) ("[t]here is no evidence that a one-year limitations period is contrary to Massachusetts public policy").[22]

As Plaintiffs have failed to prove that their subscriber agreements are procedurally or substantively unconscionable, the Court should compel arbitration here.

## IV.    ANY PROVISION OF THE POLICIES & PRACTICES THAT IS NOT ENFORCEABLE CAN BE SEVERED.

The Policies & Practices expressly provides that if "any portion of these Polices and Practices is determined to be illegal or unenforceable, then the remainder of such Policies & Practices shall be given full force and effect."  Policies & Practices ¶13.

Plaintiffs argue that arbitration cannot be compelled because the allegedly unenforceable provisions "are not independent of the arbitration provisions." Pl. Mem. at 14.  However, Plaintiffs cite to no binding Massachusetts authorities to support their argument that the clauses in the arbitration provision cannot be severed.  Indeed, "it is well-settled that if part of a contract . . . which is valid, can be separated from that which is void, and carried into effect, it may be done." Cadillac Auto. Co. of Boston v. Engeian, 339 Mass. 26, 30, 157 N.E.2d 657, 660 (1959).

Against this backdrop, this Court, were it to determine that the arbitration agreements between Defendants and the Plaintiffs contained unconscionable provisions, could sever any allegedly unconscionable provisions from the arbitration agreement.  For example, the Court could sever the one-year notice period from the Policies & Practices, because that provision exists and operates independently from the agreement to resolve disputes in an arbitration forum. Moreover, the prohibition of treble damages clause contained in paragraph 8 of the Policies &

---

[22]    Notably, Plaintiffs had meaningful choices in subscription television service and could have subscribed, for example, to the cable service of an "overbuilder" (*i.e.*, a direct competitor of an incumbent cable operator).  See RCN policies, attached to the Declaration of Chanida Oros (Exh. 3).  Moreover, not all of Defendants' competitors require arbitration of disputes in their customer agreements.  See, e.g., Exhibit 9 (Dish Network Subscriber Agreement).

Practices, is not an essential term of the parties' agreement to resolve disputes in an arbitration forum found in paragraph 10, and could be severed.  Both provisions, if held unconscionable, could be severed from the Policies & Practices without altering the essential agreement to arbitrate.  <u>See</u>, <u>e.g.</u>, <u>Sims v. Unicor Mortgage, Inc.</u>, No. Civ.A. 4:98CV25-D-B, 1998 WL 34016832, at *3 (N.D. Miss. 1998) (clause prohibiting award of treble damages could be severed from an arbitration agreement either by a court or an arbitrator).

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court stay this action and compel Plaintiffs to submit their claims to binding arbitration in accordance with the terms and conditions of their respective subscriber agreements.

July 22, 2004                         Respectfully submitted,

                                      /s/ Christopher Robertson
                                      Christopher F. Robertson (B.B.O. # 642094)
                                      Seyfarth Shaw LLP
                                      World Trade Center East, Suite 300
                                      Two Seaport Lane
                                      Boston, MA  02210-2028
                                      Telephone:  (617) 946-4800
                                      Facsimile:  (617) 946-4801

                                      Christopher M. Curran
                                      Jaime A. Bianchi
                                      George L. Paul
                                      White & Case LLP
                                      601 Thirteenth Street, N.W.
                                      Washington, D.C.  20005
                                      Telephone:  (202) 626-3600
                                      Facsimile:  (202) 639-9355

                                      *Attorneys for Defendants*

-20-

BO1 15659264.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that he has caused to be served a copy of **Defendants'**

**Reply Brief in Support of Their Motion to Compel Arbitration** upon the parties listed on the

attached Service List via U.S. Mail on the 22nd day of July, 2004.

/s/ Christopher Robertson
Christopher F. Robertson